## Taylor County v. Bank of Campbellsville, et al.

(Decided November 16, 1911.)

### Appeal from Taylor Circuit Court.

1. Limitation—When Mere Traverse of Plea is Sufficient.—When suit is brought on a note more than fifteen years after its maturity, but there are credits endorsed on the note that take it out of the statute, and the answer denies the payment of the credits and pleads the statute of limitations, a mere traverse of the plea of limitation is sufficient. But if there were no credits on the note, and the plea of limitation was interposed, it would be necessary to set up in a reply matters sufficient to avoid the plea, as, that the payor of the note had promised to pay it, or for some other reason had estopped himself from pleading the statute.

2. Evidence—Entries on Books.—Entries on the books of a bank, made in the ordinary course of its business, and which show that various credits endorsed on a note were in fact paid at the time the credit was endorsed, are competent evidence.

NOGGLE & GRAHAM and J. R. SANDERS for appellant.

W. N. JACKSON and W. C. McCHORD for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On August 1st, 1892, Taylor County, through and by the authority of its judge and justices of the peace, composing the county court, executed the following note—

"On the 1st day of January, 1893, the County of Taylor through W. R. T. McFarland, presiding judge of Taylor County, by and with the concurrence of the justices of the peace of said county, and in pursuance of an act of the General Assembly of the Commonwealth of Kentucky, approved February 14, 1888, promises and agrees to pay, and obligates and binds itself as a county through its duly authorized officers to pay to John N.

Turner, County Treasurer of Taylor County, the sum of $15,027.00, money he has advanced the county in the compromising and funding her Cumberland & Ohio Railroad debt, which money was used by the' Commissioners of Taylor County in settling said debt. This note to bear six per cent interest from date until paid.''

On the back of the note there are several credits of payments made in 1893, 1895, 1896 and 1897; and also the following writing:

"The sum named in the within note having been loaned by the Bank of Campbellsville and not by J. N. Turner, and having by mistake been taken payable to J. N. Turner, County Treasurer of Taylor County, we hereby transfer this note to said bank without recourse upon the estate of John N. Turner.

HENRY R. and J. N. TURNER, Administrators<br>of J. B. TURNER, Deceased.''

In March, 1910, the Bank of Campbellsville brought suit against Taylor County on this note, and in an amended petition set up that the credit of $1,393.43 endorsed on the back of the note as of April 1, 1895, was a mistake. The county, after some demurrers—special and general—had been disposed of, filed an answer consisting of several paragraphs, setting up in substance that the note was barred by the statute of limitation—that there was no consideration for its execution—that the Bank of Campbellsville was not the real owner of the note—that it was executed without authority—that a material alteration had been made in it after its execution, and that J. N. Turner, the payee in the note, was indebted to the county in an amount exceeding the amount of the note.

After the case had been prepared for trial, the lower court rendered judgment in favor of the bank for the amount claimed, striking out the credit of $1,393.43 before mentioned.

It appears from the record that in 1869 Taylor County by a vote of the people subscribed for $250,000.00 of the capital stock of the Cumberland & Ohio Railroad Company, under authority of an act of the legislature, and issued bonds of the county for this amount. The county defaulted in the payment of these bonds, and after this sought to compromise the indebtedness with the bondholders, and to this end secured the passage of an act of the legislature under which the county was authorized to issue new bonds to the amount of $125,-

000.00 and with the money received from these bonds to take up the old bonds issued, if they could be obtained at a price not exceeding fifty cents on the dollar. The act contained a number of provisions looking toward the settlement of the indebtedness of the county, among them was one that if any taxpayer of the county should advance money to the county to effect the proposed compromise, the money so advanced should be a valid debt against the county. Under this act, new bonds to the amount of $125,000.00 were issued and as many of these bonds as could be were sold and the money used to take up the old bonds, and some of them were exchanged for old bonds. It is further shown that some of the bondholders were not willing to exchange their old bonds for new ones but were willing to sell their old bonds for cash at from twenty-five to thirty cents on the dollar. Confronted by this situation, the officers of the county concluded to borrow money and buy as many old bonds as they could at twenty-five or thirty cents on the dollar, thus saving to the county the difference between the cost of taking up the old bonds at twenty-five or thirty cents on the dollar and issuing new bonds in their place to the amount of fifty cents on the dollar. There being some question as to the power of the county to borrow money for the purpose of taking up these bonds, the legislature in 1888 passed an act authorizing the county to borrow not exceeding $20,000.00 to enable it to better compromise its bonded debt, and to execute its notes therefor. At this time and until his death J. N. Turner was the County Treasurer of Taylor County and cashier of the Bank of Campbellsville; and an arrangement was made between McFarland and Wright, agents of the county, for the purpose of compromising the debt, and Turner, by which it was agreed that when the agents of the county could purchase any of the old bonds at twenty-five or thirty cents on the dollar, they would give a draft to the bondholder for the amount of the compromise on Turner as County Treasurer, and the Bank of Campbellsville of which he was cashier, would furnish to him the money to pay these drafts, and when all the bonds that could be bought at the price stated had been secured, a note would be executed for the amount due the Treasurer. In August, 1892, the settlement contemplated was made, and as a result the note sued on was executed. The evidence shows that money to the amount of the note was furnished by the Bank of Campbellsville

to Turner as County Treasurer for the purpose stated and the note should have been executed to the bank and not Turner. It was never the property of Turner and was taken in his name simply for the purpose of keeping his accounts straight as County Treasurer, he being charged as treasurer with what he collected and credited by the amount of the note. Taking up the objections to the judgment in the order they are discussed in the brief of appellant, the first proposition advanced is that the administrators of Turner had no authority to assign the note to the Bank of Campbellsville, and that if the note was made payable to Turner by mistake, the attempted correction of the mistake by the assignment of the administrators was a material alteration. But there is no merit in this contention. It is clear from the evidence that the note was at all times the property of the bank, and whether it was executed to Turner by mistake or merely to keep the accounts of Turner straight, is not important. After Turner's death, his administrators recognized the fact that the note belonged to the bank, and therefore assigned it to the bank.

We are cited by counsel for the county to a number of cases holding in substance that an instrument payable to a fiscal officer of a corporation, such as the treasurer of a county, can only be transferred or assigned by such officer or some other authorized officer of the corporation. But this line of cases is not pertinent to the question here presented. If as a matter of fact the county owes this note, and has no defense against it or claim it could use to defeat the whole or a part of it against the holder of it, we are unable to perceive what difference it makes to the county who the holder of the note is. If the county under the circumstances we have stated is protected in its payment, this is the only matter in which the county has any concern. We think it very clear that as this note was at all times the property of the bank and was only executed to the County Treasurer under the mistaken idea that it was necessary to keep his accounts straight, it was exceedingly appropriate that his administrators should assign it to the bank, and it is of course plain that their assignment cannot be treated as an alteration of the note. It was also competent to show by parol evidence the existence of all the facts in relation to the execution and assignment of the note.

A suit was not brought on the note until 1910, more than fifteen years after its maturity, the statute of lim-

itations interposed by the county as a defense was available, unless the running of the statute was stopped by the payments made on the note. It is shown by the evidence that the credits endorsed on the note, except the one for $1,393.43 which was entered by mistake, were made in the usual course of business and in the ordinary way, and the amount of each credit was paid at the time the credit was endorsed on the note. This being true, the plea of the statute of limitations was overcome—unless as contended by counsel this plea was not sufficiently controverted. The second paragraph of its answer and counterclaim, reads as follows:

"The defendant, Taylor County, for further answer to the amended petition herein, states that it never made payment of any of the several credits endorsed on the said note sued on, and each of said endorsements of credits on same were made without right or authority and without the knowledge or consent of the defendant. The defendant says that the plaintiff's cause of action as set out in the amended petition occurred and accrued more than fifteen years next before the institution of this action, and the defendant pleads and relies on the statute of limitations in such cases made and provided, as a bar to any recovery on account of the matter set up in the amended petition."

In its original answer it made substantially the same defense. All of the affirmative matter, including the paragraphs pleading the statute of limitation in the original answer, as well as the amended answer and counterclaim, was by agreement controverted of record. When the pleading was thus controverted of record the effect was the same as if a reply had been filed, controverting in appropriate language each affirmative allegation of the answer and counterclaim. But it is now insisted that a mere traverse of a plea of limitation is not sufficient—the argument being that when the statute of limitation is pleaded by the defendant the plaintiff must in a reply thereto set up such matters as he relies upon in avoidance of the operation of the statute, and in such a manner as to apprise the defendant of the issue intended to be raised, whether of denial or of avoidance. But with this rule of practice where the pleadings are like they are in this case, we do not agree. The credits endorsed on the note defeated the plea of the statute. The denial that these payments were made put the burden of proving them upon the plaintiff; and the statute of lim-

itation was pleaded upon the theory that no credits had been made upon the note. The effect of this plea was to charge that the note was barred by the fifteen year statute of limitation, because the action was not instituted until more than fifteen years after its maturity. The plaintiff by its traverse of the pleading, denying the credits and pleading the statute, put in issue the question as to the payment of the credits, and also the pleading setting up the statute. We do not well know how an issue could have been more clearly made as to these disputed facts than was presented by the petition, the answer and a traverse of the answer. A case might arise in which a mere traverse of the plea of limitation would not be sufficient, as when there were no facts stated in the pleadings that took the case out of the statute. For example, if there had been no credits on this note, and the county had pleaded the statute, it would have been necessary for the bank to set up in a reply matters sufficient to avoid the plea of limitation, as, that the county had promised to pay the note, or for some reason had estopped itself from pleading the statute. Jolly v. Miller, 124 Ky. 100. But, when the petition as in this case set out that the credits which took the note out of the statute were paid by the county, a traverse of the plea of limitation was sufficient.

Another objection made is that the entries on the books of the bank, made in the ordinary course of business, and which showed that the various credits endorsed on the note were in fact paid, were not competent evidence. As we have said, this note at all times was owned by the bank. The books of the bank showed this fact. The books of the bank also showed that all the entries concerning it were made in the regular course of the bank's business, and under all the authorities these entries were competent evidence. Proctor v. Proctor, 118 Ky., 474; Brannon v. Force, 12 B. Mon., 506; Galbraith v. Starks, 117 Ky., 915.

Another objection is that there was no consideration for the execution of the note. It does not seem necessary to extend the opinion in stating the voluminous facts and figures that show this note was executed by the duly authorized agents of the county in payment of money advanced by the bank to the county to enable it to take in its outstanding bonds. We think it sufficient to state that there is ample evidence showing that the note was ex-

ecuted for this purpose and that the county received the money for which it was executed.

Another ground of defense is that the county exceeded its authority in the execution of this note—the argument being that the county only had authority to borrow $20,000.00, for the purpose of compromising its indebtedness, and that the amount of this note, at the time of its execution, added to the other indebtedness created for this purpose, exceeded $20,000.00. The evidence, however, shows that at the time of the execution of this note the aggregate amount of the indebtedness of the county incurred for the purpose indicated did not exceed $20,000.00, although we are not prepared to say that the county was without authority to create in this manner an indebtedness in excess of this amount for the purpose of refunding its bonded indebtedness.

Upon the whole case, our conclusion is that this note evidences an honest debt due by the county and should be paid.

Wherefore, the judgment is affirmed.