## Harding v .Kentucky Title Trust Co.

(Decided June 25, 1937.)

WILLIAM G. DEARING for appellant.

OSCAR BADER and SHACKELFORD MILLER, JR., for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Jefferson circuit court, rendered in favor of the appellee, Kentucky Title Trust Company, for the recovery of the amount of two mortgage notes, sued on in this foreclosure action, and directing that plaintiff's mortgage lien be enforced by the sale of the property held in lien therefor.

A synopsis of the record presenting the questions and matters here involved, as set out and appearing by the confusing multiplicity of pleadings filed or tendered and a large volume of evidence, including much that is irrelevant, shows, briefly summarized, the facts to be that in October, 1917, the appellant, Colescott P. Harding, entered into a contract with Mr. L. Jacobson, a building contractor, whereby the latter was to purchase a certain lot on Breckinridge street, Louisville, Ky., for Harding, for which he was to pay an agreed price of $3,000 ($1,000 of which was to be paid him in cash); also to tear down the buildings standing thereon and erect in their place a modern dry cleaning plant, in the construction of which he (the contractor) was to advance and pay for both the materials and labor required in its building, and in consideration for these services the contractor was to receive from Harding, as his compensation for such lot, sale, and building service, a profit of 15 per cent., computed on the full amount of the cost of the project, including the $2,000 balance owing on the purchase price of the lot.

It was further provided by the terms of this building contract that upon Jacobson's completion of the work, Harding would procure from the plaintiff trust company a mortgage loan, payable according to the agreed terms of a weekly installment payment plan, with the proceeds of which he was to pay the amount of his contract indebtedness owing Jacobson arising out of his building contract, and to secure the payment of such amount of loan as the plaintiff company might be

willing to make him on the plant property, he was to execute to it a first mortgage thereon; and for securing payment to Jacobson of any balance of the building contract owing him or remaining unsatisfied or uncared for after applying thereon the plaintiff trust company's loan, Jacobson was to either further arrange therefor by procuring a second mortgage loan for Harding upon the property for the additional amount required for the full payment of his debt or was himself to take a note therefor, secured by a second mortgage on the property; that pursuant to such contract arrangement made, upon Jacobson's finishing this building project in October, 1917, Harding borrowed of the plaintiff trust company the sum of $8,000, to be paid upon the terms of an agreed weekly installment plan, which contained a "service charge" provision, whereby the appellant was to include in such payments to the plaintiff lender, in addition to the amount of the weekly installment payment of interest and principal, the further amount computed at 14 cents per $1,000 of the loan required as a "service charge" made by lender for services rendered and promised in connection with the loan; also, it appears that this $8,000 borrowed of the plaintiff trust company falling short of the amount owing Jacobson upon his contract for the balance owing on the lot, the building, and his 15 per cent. commission on the total amount of the project, in the sum of $7,300, Harding then executed his note to Jacobson for the sum of this amount, secured by a second mortgage, and directed the same made in the name of or else turned over to the trust company for its making of the agreed weekly installment collections upon it, together with those upon its own $8,000 note.

After Harding had, pursuant to such plan of paying the two notes, made some 440 weekly payments, in the installment amounts agreed upon, upon these two mortgage notes to the plaintiff company, he, in 1926, decided to refinance the balance then owing upon them, as stated supra, by securing a new or second mortgage loan from the plaintiff trust company sufficient in its amount to pay both this balance owing it and Jacobson and also provide an additional sum at the time desired for his personal use.

To such end an entirely new loan was obtained from the plaintiff company by the defendant Harding (here appellant) in the sum of $19,000, out of the proceeds of

which he paid off the balance owing the trust company and Jacobson upon their aforesaid two earlier notes, without deduction allowed him from the amount of his payments made the trust company of the part thereof it retained as service charges provided for in connection with the first loan agreement for examining title, executing papers, etc., required in making both the first and also the second loan.

This second loan procured of the plaintiff company was secured by a mortgage upon this same property put in lien to it for the first mortgage debt, and upon which the appellant proceeded to make weekly payments of something over $40 thereon until June, 1933, when he procured yet another or third loan from the plaintiff trust company, the proceeds of which he applied in part to refinancing the balance then owing by him to the trust company upon its second or $19,000 loan made him in 1926. In evidence of appellant's obligation incurred for this last or third loan he gave the trust company two notes, one in the principal sum of $10,800 secured by a first mortgage on the aforesaid real estate, and the other in the sum of $2,600 secured by a second mortgage on the real estate and a first mortgage on the personal property and equipment in the dry cleaning plant.

Each and all the notes executed for these three loans made successively to appellant, as set out supra, contained this same provision calling for the borrower's payment to the trust company of what is referred to in the notes and commonly called a "service charge," whereby the notes, so providing, might be regarded as containing two separate contracts, one of them providing for the payment of a specified sum weekly upon the accruing interest and principal of the debt for a period of 663 weeks and the other providing for the payment of a "service charge" of 14 cents on each $1,000 of the debt for certain services rendered and to be rendered by lender and certain rights thereunder extended the debtor with reference to the examination of his title, execution of certain instruments for closing the trade, in the event he made a contract to sell the property, or making such report for him in event he desired it. As a further item of promised service, for which the charge was made, the trust company agreed (if so requested by him) to appear before any board authorized to review an assessment of the property, and endeavor, on

behalf of the owner, to have any injustice in the assessment remedied.

On November 24, 1934, Harding having made default in his promised weekly installment payments upon these two notes executed to the trust company, covering the amount of his third loan, it filed this foreclosure suit upon them, seeking their collection by an enforcement of its mortgage liens against the property and its sale to satisfy appellant's debt.

Plaintiff's petition consisted of two paragraphs, the first seeking the enforcement of the mortgage securing payment of the first of these two notes, of date June 3, 1933, in the sum of $10,800, in which it was provided that the weekly installments on this note, each in the sum of $24.84, were to be paid for a period of 104 weeks, when its unpaid remainder of $9,601.20 was to then become due and then to be paid.

Also the petition alleged that the plaintiff trust company had paid numerous items of state and county taxes and special assessments and fire insurance premiums on the property in lien and sought to recover the sum of $10,547.14, with interest from November, 1933, and the other sums mentioned paid by it for taxes, insurance, etc., and prayed that it be adjudged a lien on the property therefor and that the real estate be sold to satisfy the lien.

By the second paragraph of the petition, plaintiff asked recovery against the appellant upon its second note sued on in the amount of $2,445.33, with interest from November, 1933, as the balance owing it upon the second note, and the enforcement of its second mortgage lien held therefor on the real estate and its first lien on the personalty and equipment of the plant.

To this petition, appellant filed first certain dilatory pleas and then a demurrer, which was overruled, whereupon he filed an answer, counterclaim, and set-off, consisting of two paragraphs, by the first of which he denied there was any valid consideration given for the notes sued on and by the second alleged that the notes were usurious, illegal, and void, and asked judgment against plaintiff in the sum of $23.27 and that the notes and mortgages be canceled.

Demurrers were filed to each paragraph of this pleading, which were sustained, with leave given the

defendant to amend. Thereupon, defendant filed an amended answer and counterclaim to which plaintiff again filed a demurrer to each of the two paragraphs thereof.

By the first of these paragraphs, he denied the execution of the notes and by the second alleged that the notes and instruments set out in the petition were usurious, illegal, fraudulent, and without consideration and that defendant by his weekly payments had more than paid the notes, and asked that the plaintiff's petition be dismissed and that he recover judgment on his counterclaim against plaintiff for the sum of $109.51 with interest.

The chancellor, by his order made March 8, 1935, overruled the demurrers to the paragraphs of the answer and also therewith, upon his own motion, ordered that the said two paragraphs of the answer and amendments thereto "be controverted of record" and that the case be referred to the commissioner for taking proof and reporting his finding as to the true amount of plaintiff's debt, if any; and that the property be sold if necessary.

Following this, appellant made repeated motions to file three further tendered amended answers and counterclaims, each setting out anew the appellant's claim that the notes were given without consideration; also, that the service charge item contained in each of the series of notes given successively, in procuring each of the three loans made the appellant, was invalid and was but a camouflaged form and scheme for plaintiff's extortion of usury, and, by some method of calculation not altogether clear to us, figured that, by reason of the many weekly payments so long made, out of each of which he charged the trust company wrongfully deducted the usurious "service charge" made in connection with handling each of the three note and loan transactions, which he treated and pleaded as one continuous transaction, he had overpaid the amount of the loans made him by some $11,000, for which he asked judgment against plaintiff.

The learned chancellor, it is apparent from an examination of the record, and by his reference and repeated re-reference to the commissioner of the matters and questions raised by the pleadings and contentions of the appellant as to usury, alleged by Harding to have

been paid and involved in all of the notes, both prior to and including the two last ones here sued on, earnestly endeavored to find out the truth as to such statements and contentions made. The commissioner in turn accordingly so reported, showing his finding as to the amount owing as a balance upon the notes sued on if the service charge, retained by the trust company out of the weekly payments by Harding, upon these three successive loans, was disallowed as being a usurious or improper charge where not supported by any actual service rendered as a consideration therefor; and, on the other hand, the larger balance owing the trust company if the service charge made and deducted by it from Harding's payments was allowed the plaintiff as a proper or actual service charge. If the service charge retained was disallowed as being usurious, its amount should then be credited as a payment made upon the notes, thus reducing the balance owing plaintiff.

Also, it was shown by the report that a certain commission of some $468 was charged by the trust company for procuring the loan and in effect also paid out of the proceeds of one of the loans made appellant by plaintiff, which was, by agreement of parties, disallowed as usurious and credited back to appellant as a payment made upon his note.

Exceptions were filed by the appellant to each report made by the commissioner as to his findings upon appellant's usury claims and as to the corresponding amount or balance found owing upon the notes.

The court by its opinion of September 16, 1935, when discussing the matter of the controversy here raised by appellant as to the alleged usury claim based upon this service charge made by plaintiff as being such in substance, said in part:

"By answer, set-off and counterclaim, the defendant traverses the material allegations of the petition and attempts to plead usury to the extent of the balance due on the notes.

"Later, the defendant, by a traverse, denies that the defendant received value for the notes when executed and again pleads usury and seeks to recover the sum of $109.51.

"By a further amended answer, the defendant reiterates the plea of usury and seeks to recover the sum of $11,432.97 on his counterclaim.

"This action was referred to the Commissioner who, in a lengthy report setting forth the facts as understood by the Commissioner, finds that the plaintiff is entitled to recover."

certain stated sums named, subject to certain named credits for improper charges on the 1926 loan and for certain errors made in regard to the 1917 and 1926 loans.

Upon the chancellor's later hearing of the cause on oral argument upon the defendant's exceptions to the commissioner's report, the court, on its own motion, requested the parties to furnish their respective calculations showing the balance due, if any, to the plaintiff for the money which defendant received from it in the course of all the loan transactions had between them from the time the original notes were executed in 1917, with 6 per cent. annual interest thereon. These requested calculations as to the total debt amount then owing by the defendant Harding were furnished the court, together with elaborate briefs, by both parties in support of their conflicting contentions respecting same.

The chancellor, in the course of his opinion answering their claims, further stated his conclusions reached as to their merit, in part, as follows:

"The defendant, on June 3, 1933, by his written statement, in the form of notes and mortgages, duly executed and acknowledged, admitted and stated that he was then indebted to the plaintiff in the sum of $10,800.00 and the further sum of $2,600.00, but he now seeks to avoid the payment of these obligations on the theory that the plaintiff has since 1917 charged and collected from him for the use of money usury to the extent of the amount due on said two notes, plus $11,432.97.

"The pleadings cast upon the defendant the burden of proving usury with reasonable certainty and the Court of Appeals has on each occasion when this question was submitted to it, held that the burden is upon the one claiming that a debt represented by a note was usury to show what part of the debt, if any, is usury and that where the evidence is conflicting, in order to sustain such defense, the person claiming usury is required to prove not only that usury was paid and received but the amount thereof. * * *

"While the evidence is not sufficient to meet the requirements of the rule that the defendant must prove, with reasonable certainty, the amount of usury collected, we have reached the conclusion that the only evidence supporting the defendant's claim of usury is the statement contained in the note wherein it is said:

" 'In each of said installments there is included compensation, at the rate of fourteen cents per thousand dollars, a rate hereby agreed upon as fair, for certain unusual services, which the Trust Company obligates itself to perform, with respect to the property in lien to secure this note, so long as it shall remain thus in lien, including the following services.'

"If I correctly understand the evidence and the report of the Commissioner, the installments set forth in the note aggregate 6% interest plus 14c per thousand for certain unusual services which the trust company obligated itself to perform for the defendant and if this fourteen cents per thousand was intended by the parties to be a payment for the forbearance for the use of the money loaned, then the amounts are usurious to that extent and as said by the Court of Appeals in Fitzpatrick v. Apperson's Ex'x, 79 Ky. 272:

" 'To the extent that usury is embraced in the debt, and so long as it can be traced, a new obligation given in discharge of the old indebtedness is without consideration.'

"And in Roberts v. Thomas, 4 Ky. Law Rep. 227, the court said:

" 'Where * * * usury is carried forward into the new obligation so as to form any part of the amount agreed to be paid by it, then on the plea of the debtor the usury should be extracted.' "

Further, the opinion, in discussing the service charge provision in the note, states that:

"The Commissioner sustains the 14 cents per thousand on the theory that it is a reasonable charge for a loan of this character, 'which charges are undoubtedly absorbed in the preparation and sale of bonds, the collection of the weekly payments from the borrower, which is turned over to the

bondholder, and the bookkeeping and overhead incident thereto, and the servicing of said loan in the way of watching taxes and insurance and such other services as are agreed to be rendered to the borrower and which services are listed on the back of the notes filed as exhibits in this case.' * * *

"I cannot sustain the conclusion reached by the Commissioner that the plaintiff has the right to charge fourteen cents per thousand in addition to 6% per anum for a loan of this character, or any other loan. I cannot agree that the charge is absorbed in the preparation and sale of bonds, because there is no evidence that the bonds were sold for the use and benefit of this defendant. This is a direct loan by the plaintiff to the defendant and if the plaintiff thereafter pledged this note and issued bonds thereon, it was a voluntary act on its part and this defendant is not responsible to it for any part of the expense thereof. Plaintiff was interested in collecting the weekly payments and the defendant is not chargeable with any bookkeeping by the plaintiff or any overhead incident thereto. The defendant did not agree to pay the plaintiff for any services other than that set out in the body of the note. The defendant, by his own writing, has expressly stated and agreed that the charge of 14 cents per thousand is fair for the services which the plaintiff obligated itself to perform.

"The pleadings, as well as the proof, do not, with much certainty, set out the amount of usury claimed to have been paid the plaintiff by the defendant.

"The defendant on June 3, 1933, with full knowledge of all the transactions had since 1917, in writing, solemnly declared that he was then indebted to the plaintiff in the sum represented by the two notes filed with the petition and then stated that 14c per thousand dollars was reasonable compensation for the personal services which plaintiff agreed to render him in connection with the two loans. Even though the plaintiff made solemn and binding obligation to pay usury, the laws of this State give him the right at this time to purge the notes of all usury and he is invoking this law in an effort to relieve himself from the payment of the

notes. As I have heretofore said, the defendant has failed to definitely state or prove the amount of usury which the plaintiff has collected as well as the amount contained in the notes, unless we say that all of the 14c per thousand dollars collected was usury. The contract for the services which plaintiff agreed to render is partly valid and in part void. This contract is for services to be rendered in the future, but I am unable to find in the proof sufficient statement of facts to show that the services were actually rendered. Therefore, I am forced to the conclusion that the 14c per thousand collected since 1926 and such part thereof as is now included in the balance due on the two notes is usury and that the notes should be purged of all the usury collected since 1926 or that contained in the two notes. * * * It appears from the evidence that such service charge or usury as was collected prior to 1926 was for the benefit of Jacobson and that the plaintiff paid same as part of the consideration for the notes.

"In the light of the evidence, the Court finds:

"1. That the plaintiff is not liable for any usury collected until it became the owner of the two notes.

"2. That the plaintiff is entitled to recover the balance due on the two notes and for taxes paid.

"3. That the exceptions to the depositions be and the same are overruled.

"4. That the defendant's exception to so much of the Commissioner's report as finds that the 14c per thousand dollars for services is reasonable is sustained.

"5. This cause is now re-referred to the Commissioner, who will find and report what part of the notes sued on represents 14c per thousand collected since 1926 or now reflected in the two notes. He will also find and say what sum was collected as service charges prior to 1926 and he will further find and say what services the plaintiff rendered and the reasonable value of the services rendered.

"6. He will, after making said finding, calculate the balance due under each finding and report thereon."

Upon final hearing and submission of the cause upon the plaintiff's motion to confirm the supplemental report of the commissioner and also upon the defendant's exception to said report and amended exceptions thereto, the court adjudged as follows:

"That the service charge in the $8,000 note, executed by Colescott P. Harding to the plaintiff, Kentucky Title Trust Company, on October 27, 1917, is a proper deductible charge from any indebtedness due by defendant to the plaintiff.

"The court further finds and adjudges that the service charge in the $7,300.00 second mortgage note, dated October 27, 1917, executed by the defendant, Colescott P. Harding, to the plaintiff, was executed as part of the contract entered into between Colescott P. Harding and L. Jacobson for the construction of the building located on the property hereinafter described and constituted part of the consideration for the construction of the building and is not a proper deductible charge from plaintiff's indebtedness.

"The court further finds and adjudges that the service charge included in the $19,000.00 note, executed on March 27, 1926, a part of which is a renewal of the original note executed by Colescott P. Harding, is a proper deductible charge from the indebtedness due by defendant to the plaintiff, and the court further finds that the service charge in the note of $10,800.00, dated June 3, 1933, and the $2,600.00 note, dated June 3, 1933, are proper deductible charges from the amount due from defendant to the plaintiff.

"The defendant, by an amended exception to said commissioner's report, claims that the total balance as found by the commissioner of $11,100.43 is error and that said balance should be only $10,-637.33, and to that extent the court sustains the defendant's exception, as amended, to the report. * * *

"That the commissioner's report heretofore filed on February 21, 1936, subject to the exception hereinbefore sustained, be and the same is confirmed and that the plaintiff, Kentucky Title Trust Company, recover of the defendant, Colescott P. Harding, the sum of $10,637.33 with interest there-

on at the rate of 6% per annum from March 2, 1936. * * *''

From this judgment appellant appeals, insisting, first, that the court committed a reversible error in the early stages of the proceedings herein by its order directing that the two paragraphs of defendant's answer and counterclaim be controverted of record, which order was made not pursuant to agreement of parties but upon the court's own motion and during appellant's absence and that of his counsel from the courtroom.

This order, it appears, was made in the course of the court's hearing of this matter at a time when the case was set down for hearing, of which the defendant had notice, and when he should have properly been present in court. Nonetheless, the defendant contends that under the provisions of section 126, Civil Code of Practice, requiring that every material allegation of a pleading must, for the purpose of the action, be taken as true, unless specifically traversed and that, the plaintiff having failed by reply to deny the material allegations as to usury, lack of consideration and payment made in defendant's answer and counterclaim to the petition, they stood admitted as true and entitled defendant to a judgment thereon. Further as to this erroneous order, appellant contends that there exists no authority in the court to make a traverse of the allegations of a pleading of a litigant before it, or to do so by order, entered upon its own motion, controverting of record the allegations of such pleading, and that the court is without authority to direct the entry of such order, except where made upon agreement of parties thereto. In support of this contention he cites and relies upon the case of Sachs v. Hensley, 220 Ky. 226, 294 S. W. 1073, 1074, wherein the court, in discussing this point, said:

"The counterclaim filed by Sachs was in the nature of an action on his part against Hensley. It was sufficiently pleaded, and had the force and effect of an action against him. It demanded an answer, which is called a reply under our Code, and to put it in issue it was necessary for Hensley to file a pleading thereto, under section 98 of the Civil Code. He had not done this, and, at the time of the submission of this case to the jury, the counterclaim made by Sachs stood confessed. The Civil

Code does not provide any method of making an issue other than by filing a pleading, where the amount in controversy is over $50. Parties may, by agreement, waive a formal pleading. See 31 Cyc. 724. In this commonwealth, litigants frequently agree, such agreement being noted, by order entered of record, that the affirmative matter of a pleading can be taken as controverted, thereby waiving formal pleading, and while this practice has no specific Code indorsement, it has been approved by this court; but each time we have approved such an order, we have been careful to state it was done by agreement of parties. See Conlee v. Gilbert, 214 Ky. 484, 283 S. W. 440; Garriott v. Brandenburg Construction Company, 199 Ky. [673] 676, 251 S. W. 935; Taylor County v. Bank, etc., 145 Ky. 389, 140 S. W. 680.

"While parties can waive pleadings in this manner, pleadings cannot be waived for them by the court."

While such is undoubtedly the well-established rule of practice and in instance arising under similar facts and circumstances as presented in the quoted Sachs Case, the court would be constrained to following the ruling as there made and declared, we are of the impression that the order here made by the court to controvert of record the material allegations of the defendant's answer applied to a factual situation easily distinguishable from that stated and presented in the Sachs Case, where it appeared that the order controverting of record the allegations of Sachs' counterclaim was made when and where there had been no order setting the case for trial and without any notice to Sachs that his case was called and when the court proceeded to try the cause in the absence of both Sachs and his counsel. The defendant in that case, it is to be observed (as another distinguishing fact in the situation there presented), immediately took steps to have the error corrected upon learning of it and to object to the procedure had, without notice given him thereof, by promptly moving for a judgment, notwithstanding the verdict, on the specific ground that no reply had been filed and for a new trial, supported by affidavits, both of which motions were overruled.

In the instant case, the order controverting of record the two paragraphs of the answer and amendment

thereto was made, it may oe presumea, with notice to the defendant, in that the case was regularly set upon the docket and called for hearing in due course of the court's regular term, but nevertheless at a time when the defendant, it appears, happened to be absent from the courtroom, notwithstanding his then having full notice that the action stood on the court's docket for hearing on demurrer to the amended answer and counterclaim.

The court by this, its one and the same order, by which it in part ordered controverted of record the allegations of the answer and counterclaim, also thereby further ordered the case referred to the master commissioner for the taking of proof and overruled the plaintiff's demurrers to the defendant's amended answer and counterclaim. No objection whatever was at the time made in the lower court to the court's action in making this order controverting of record the allegations of defendant's answer and counterclaim, but defendant, when advised to all intents and purposes, appeared to acquiesce in the order so made by proceeding, without objecting thereto, to introduce his proof before the commissioner, to whom the cause by the same order had been referred.

Also, it may be taken as an equally well-settled rule, which has been repeatedly announced by this court, that where a pleading is treated by the parties as having been traversed and proof taken as if issue had been joined thereon, even though a traverse has not actually been filed, the court will treat the pleading as if traversed. To such effect, see Louisville & N. R. Co. v. Copas, 95 Ky. 460, 26 S. W. 179, 16 Ky. Law Rep. 14; Preston v. Preston's Adm'x, 245 Ky. 552, 53 S. W. (2d) 957, 960.

In the latter case on appeal the point was made that the answer was insufficient to support the judgment, because no reply had been filed thereto making an issue. To this the court said:

"The record shows that the parties treated the answer as constituting a counterclaim upon which issue was joined and much proof taken upon the issue therein made as to whether or not the deceased Oscar H. Preston was at the time of his death the owner of the property in controversy. There was certainly no default nor lack of contest

on the part of plaintiffs upon this issue. Certainly too the judgment here was not taken by default on this issue, nor was there lack of contest here upon the issue made by the evidence as to the ownership of the property in controversy, and it is the rule that, where the case is tried as if issue had been made by reply and attention of the court is not called to failure to reply, the right of defendant to move for judgment is waived."

In the instant case the issues raised by the defendant's amended answer and counterclaim were that the notes in question were without consideration and contained usury. The case was practiced and proof introduced and argued by the parties throughout its hearing on those issues. The defendant himself testified in detail on all of these points and made every effort over a period of months to prove the contentions advanced by the pleadings in question. In short, the case was handled by everybody, the parties themselves, their attorneys, the commissioner, and the court as if these issues were properly joined and raised or as if traversed. No objection, it is stated, and undenied, was made at any point in the proceeding by the defendant that his amended answer and counterclaim had not been traversed or that the court's order controverting of record the allegations of the pleading was objected to in any way, nor upon final submission was any suggestion made by defendant or his attorney that the issues heard and argued were not properly made and presented by the pleadings. It would thus clearly appear that the defendant, by his silence, failure to object and acquiescence in the court's order of reference to the commissioner for taking proof, and his offering proof upon the issues so raised, treated the pleadings in the case and order of the court, controverting the allegations of his answer, as raising and joining the issues submitted, just as if same had been regularly raised by a reply filed to the answer. The appellant having thus apparently acquiesced in the court's now complained of triple order, and throughout the trial manifested such acquiescence by joining with plaintiff in treating the issues as raised upon his counterclaim and taking proof thereon, it would appear to be altogether too late for him to here attempt to raise, for the first time in this court the objection he insists upon, that the order of the court entered, controverting of record the allegations of

his answer, without agreement of parties, was a reversible error. While the order was technically incorrect, in view of the applicable provisions of the Code, as well as under the rule announced in the Sachs Case, supra, and other like cases, we are yet of the opinion that appellant is not in a position to here insist upon the same, but should rather be treated as having waived the objection through failure to timely present it, and also by reason of his having treated the case as one in which issue was raised upon his counterclaim, just as though such issue were regularly joined thereon by reply traversing it.

Appellant next insists that the court erred in refusing to allow but one, the first, of his several amended answers and counterclaims to be filed.

It is sufficient answer to this to say that an examination of the record clearly tends to show that the defendant was, by his conduct in persistently tendering these repeated pleadings, considered by the court as attempting to delay the trial in that they either raised issues as to matters not relevant to the material questions presented in the case, or again pleaded matters fully set out and pleaded in his first amended answer and counterclaim.

Section 134 of the Civil Code of Practice, the provisions of which the appellant contends were here violated, by the court's refusal to allow the filing of his tendered pleadings, it is to be noted really vests the court with a broad discretion in the matter of allowing amendments to be filed (Moore v. Damron, 157 Ky. 799, 164 S. W. 103) and where an amended answer does not conform to the proof, but its effect is to substantially change the defense by the pleading of irrelevant matters to be put in issue, it is clearly not mandatory upon the court, but in fact it would appear improper, to allow the same to be filed; and, further, that even where the court's refusal to permit an amended pleading to be filed is technically erroneous, it is yet to be considered a harmless error, if upon the whole case it does not appear to have prejudiced the rights of the complaining party. Chesapeake & O. R. Co. v. Conley, 136 Ky. 601, 124 S. W. 861, 866; Pate v. Berry, 140 Ky. 102, 130 S. W. 815; Petry v. Petry, 142 Ky. 564, 134 S. W. 922; Palmer v. Smith, 204 Ky. 82, 263 S. W. 773.

Further, the defendant complains that the court

was without warrant or authority of law to allow the plaintiff to introduce in this case the Jacobson contract to cover up the alleged fictitious note for $7,300 in that such note was the property of Jacobson, while suits must be brought by the real party in interest and the beneficial owner of the note is a necessary party.

However, upon such contention made as to the original execution of the $7,300 note to Jacobson, secured in its payment by a second mortgage on the property, the court found that the making of this note and the paying of the service charge thereon, in the course of its weekly installment payment, was a part of the contract made by the appellant with Jacobson and that the service charge to be paid and paid the trust company was supported by the consideration there recited for the contract had with him. In addition to this, it is clearly apparent that this second, or 1926, loan of $19,000 was in its entirety borrowed by appellant from the plaintiff trust company and its full amount then became an obligation owed solely to plaintiff and by it held against appellant, regardless of whether appellant did or did not apply a part of the proceeds of the loan to the payment of the earlier $7,300 note obligation executed Jacobson.

Appellant's final contention is that the service charge provision of the contract was but a camouflaged scheme, devised by the trust company, for concealing its collection of usury, that large amounts of usury were, under the color of such service charge, paid plaintiff and that he, in fact, had under such guise paid more than the amount of the trust company's loan to him.

Similar charges of usury are frequently made in connection with real estate loans providing for service charges.

Such a misconceived claim was presented in the case of Union Central Life Insurance Company v. Edwards, 219 Ky. 748, 294 S. W. 502, 505, in which we there reversed the decision of the lower court holding the service charge to be usurious. After quoting section 2219, Kentucky Statutes, we said:

"This statute defines usury. Our legal rate of interest is fixed at 6 per cent. per annum. It is certainly true that one lending money may receive for the use or forbearance of his money the full legal

rate of interest without incurring the penalty of the statute, supra. Under this statute and our opinions construing it a lender of money may properly charge to a borrower the necessary reasonable expenses incident to the loan without incurring its penalty. He has the right to require the borrower to pay the reasonable cost of ascertaining whether the security offered is ample. If the security offered is real estate he may properly charge to the borrower the reasonable cost of having abstract title made and the reasonable expense of its appraisement. He may properly charge to the borrower the necessary reasonable expenses of having the contracts and mortgages prepared and the fees for recording the mortgages. The borrower may be made to pay these expenses incident to the loan in addition to the full legal rate of interest, because they constitute no part of the contract for the use or forbearance of the money lent.''

And again, in Ashland National Bank v. Conley, 231 Ky. 844, 22 S. W. (2d) 270, 272, did we reverse the judgment of the lower court, saying:

''The principles of law applicable to the solution of the questions raised by this case are simple. The difficulty arises in their application. It is settled that, where the borrower agrees to pay the lender a sum greater than the legal rate of interest, if the consideration for this agreement is the use of the money loaned, it constitutes usury, but, on the other hand, if the consideration is for services actually rendered to the borrower and the agreement for services is made in good faith, and is not a cloak to conceal usury, the transaction is not an usurious loan.''

See further 66 C. J. 236, sec. 177, where the applicable rule is thus stated:

''There is no usury in such a transaction in the absence of bad faith even though the debtor would not have entered into the collateral contract but for the loan or forbearance, or for the purpose of inducing it, provided there is an independent consideration to support the collateral contract, any incidental benefit to the creditor being deemed immaterial.''

The learned chancellor, in applying and attempting to apply the rules announced in these cases, upheld the service charge provision of the contract as one not usurious in character but a valid one, but in dealing with same, further held that as this service charge provision was one promising and undertaking to render future services to the borrower in consideration of the charge provided therefor, it could properly be collected only where it was shown that the service for which such payment was promised had in fact been rendered, and therefore that certain of the service charges herein shown to have been made and collected should not be allowed to be retained as such, as the trust company had not shown that the services for which such charge was provided and collected had in fact been rendered. Therefore, the amounts so paid, together with interest from the time of payment, should be credited upon the note as payments made thereon, rather than deducted as a proper payment made for service charge.

Appellee complains in brief of this ruling, contending that the court went further than authorized under the decisions of this court, in holding all the service charges shown collected should be restored borrower or credited upon his debt, yet it is unneedful to here discuss that question or to consider such complaint on the part of appellee, in that it is not properly here presented by its cross-appeal.

Therefore, we are, for the reasons hereinabove stated, of the opinion that the judgment of the learned chancellor should be and it is affirmed.