## Browning et al. v. Ford Motor Co.

June 17, 1941.

262

Edrington & Redmon for appellants.

Woodward, Dawson & Hobson for appellee.

Opinion of the Court by Judge Perry—Affirming.

On or about January 21, 1934, the appellant and compensation claimant, John William Browning, while at work as a surplus stock handler in the stockroom of the Ford Motor Company's plant in Louisville, Ky., claims to have sustained an accidental injury which resulted in a hernia.

Notwithstanding his claimed disability resulting from this injury, he continued to work for the Ford Motor Company at the same or, later, somewhat easier work up until May 5, 1936, when, due to business conditions (it is claimed), he and other employees at the Louisville plant were laid off, following which, in June, 1936, he filed his claim for compensation with the Workmen's Compensation Board for a compensable hernia disability, alleged to have resulted from and been solely caused by an accidental injury suffered, which he claimed had arisen out of and in the course of his employment.

It was stipulated by the parties that at the time his claimed accidental injury was received in January, 1934, both parties had accepted the provisions of and were operating under the Kentucky Workmen's Com-

pensation Act and that the plaintiff's wages were $6 per day.

The case was tried before a referee in July, 1936, who in August, 1937, rendered his opinion and award (which was adopted by the Board), setting out therein as his finding of facts that:

"(1) There was an injury resulting in hernia; (2) the hernia did not exist in any degree prior to the injury for which compensation is claimed; (3) the defendant had due notice of plaintiff's injury; and (4) the average weekly wage of plaintiff was sufficient to justify a maximum weekly award,"

and, basing its award thereon, the Board ordered that

"the plaintiff, John William Browning, recover of the defendant, Ford Motor Company, compensation at the rate of $15.00 per week from May 5, 1936, until such time as the plaintiff will have been operated upon to cure the hernia in question and his recovery therefrom, plus an allowance of $200.00 for surgical and medical benefits."

Thereupon counsel for the company moved for a full Board review, which was sustained and following a careful review of the record, the Board rendered its award in October, 1937, amplifying and affirming the award and opinion of the referee.

From that award the company, on October 8, 1937, duly prosecuted an appeal to the Jefferson circuit court.

By its petition filed therein, it set out the proceeding had before the Compensation Board, the evidence heard, the referee's award and the full Board's affirmation of it, and further averred that the ruling by the Board was in excess of its power and that its orders of August 17 and October 19, 1937, and each of them, were not in conformity with the provisions of the Workmen's Compensation Act, in that the Board allowed the claimant an award when there was no evidence at all in the testimony taken before it to support Browning's claim that the hernia in question was the result of an injury which arose out of and in the course of his employment, and concluded with the prayer that the court adjudge that the Board set aside its award to Browning of compensation and enter an order refusing his claim therefor.

At the time the court rendered judgment in accord with the prayer of the petition, it also delivered a written opinion (made a part of the record), setting out as the ground of its judgment that Browning's claim for compensation was not filed with the Board until June 11, 1936, which was more than one year after his claim was made upon his employer for compensation in the fall of 1934, when (it is admitted) a disagreement arose between them by reason of the company's refusal to pay compensation, and that, by reason of such then disagreement, the claim of Browning was, at the time of its later filing with the Compensation Board more than a year after their failure to agree, barred by the one-year limitation, within which it was required to be filed with the Board by section 4914, Kentucky Statutes.

Appellant in his brief insists that the court committed a reversible error in remanding the case to the Board, with the direction to dismiss his claim upon the ground that it was barred by limitation, when no such ground had been set out or pleaded in appellee's petition, as required by section 4935 of the Compensation Act, providing that the "petition shall state fully the grounds upon which a review is sought" and "assign all errors relied on" and that, the company having failed to plead the statute of limitation in its petition, as required, the court erred in deciding the case upon such ground, as it was neither relied on nor assigned as an error in its petition asking the court's review.

In answer to this contention, appellee contends that the question of limitation, even though not pleaded in in the petition, was before the court and available to it as a ground for its decision, for the reason that it appears by the record of the testimony of the parties offered before the Board that it was raised, that appellee had relied on it from the beginning of the case and that it was one of the employer's two specific points of defense—the first being that there was no evidence in the record to support appellant's claim that the hernia resulted from any injury sustained by him while employed by the Ford Motor Company, and the second, that no application for compensation having been filed with the Board within one year after the claim therefor was denied or the parties failed to agree, claimant's application was barred by limitation, as was expressly held

in the like case of Scott Tobacco Co. v. Cooper, 258 Ky. 795, 81 S. W. (2d) 588.

Appellee avers that the testimony taken before the Board clearly shows that counsel for appellant and for appellee alike had these two points well in mind in their examination of witnesses, in that appellant's counsel repeatedly sought, by his interrogation of them, to bring his client's filing of his claim with the Board for compensation within the statutory period, by attempting to show that there never had been a disagreement between him and his employer as to compensation, while, on the other hand, counsel for appellee, when questioning appellant on cross-examination, directly asked him whether he had applied for and been denied compensation, when he, without qualification, admitted that he was refused compensation by his employer in the fall of 1934 and that a disagreement then arose between him and appellee over the question of the latter's liability to him for compensation for his hernia injury and resulting disability, alleged to have arisen out of and in the course of his employment in the preceding January.

Appellant, when testifying before the Board upon his direct examination, after describing the manner and circumstances under which he claims to have received the hernia disability in January, 1934, was asked:

"Did you ever talk to the company with reference to compensation, or not? A. Why yes, I went in to see them several times; Dr. Kremer—he always said there was nothing the matter with me; I figured the less I had to say about it the better off I was.

"State whether or not you ever talked to them with reference to the payment of compensation? A. I don't remember exactly whether we came out in plain words to that effect, or not, about compensation, but I figured they would do their duty by me.

"State whether or not you ever had any disagreement with the Ford Company with reference to payment of compensation to you for your injury? A. I don't know that we really had any disagreement to that effect, or not.

"What did they tell you? A. They told me to

continue working there, they would take care of me and put me on light work, which they did; they transferred me back to the store room, and the boss said he had instructions to take care of me, and not give me heavy work of any kind.

"State whether or not they ever had at any time told you they would, or would not pay you compensation? A. They never said I was entitled to it, they said they could still use me.

"I don't think you understand that question, state whether or not you were ever definitely refused compensation by the Ford Motor Company? A. Yes, I was refused any kind of compensation.

"When was that? A. Well, it was on one of my trips that he (the doctor) examined me, I don't remember the exact date each time I went to see him.

"State about how long that was before you left the employ of the company? A. Oh well, the first time it was probably about the fall of 1934.

"When was the last time? A. Well, the last time I talked to them was—let's see, it must have been along January or February, somewheres along there, in 1936, the last time.

"At what time were you discharged by the Ford Motor Company? A. I think it was the 5th of May, if I am not mistaken.

"5th of May of what year? A. Oh, this year—1936.

"Since the 5th of May, 1936, has the Ford Motor Company offered or paid you any compensation? A. None whatever.

"Now, you left the employ of the company in May of this year, did you file an application, or make an application for compensation after that time? A. Not after I left before—yes, I did.

"Were you granted or refused compensation? A. I was refused it."

Also, when asked whether previous to that time they had refused to pay him compensation, he answered, "Yes—in 1934."

Further, on his cross-examination by counsel for appellee he was asked:

"From January, 1934 up to May, 1936 you worked regularly for the Ford Motor Company, didn't you? A. I was on the payroll regularly, but I lacked a whole lot of working regularly.

"You received your pay regularly? A. Yes, sir.

"And you did what work was assigned you? A. Yes. * * *

"Now, in the fall of 1934 you were complaining to the Ford Motor Company that you were entitled to compensation, were you not? A. In the Fall of 1934—yes, sir.

"And they told you that you were not entitled to compensation? A. Well, they put me back to work.

"I say, they told you that you were not entitled to compensation, didn't they? A. Yes.

"And that was after you told them that you thought you were entitled to compensation? A. Yes, sir.

"Mr. Browning, while you were working for the Ford Motor Company, and back along 1934, you were off sick with rheumatism for awhile, weren't you? A. Well, there was one doctor that told me I had rheumatism—yes, sir.

"You were off from work, weren't you? A. I was off, part of the time with my foot, and part of the time with my rupture.

"And you had some trouble with your feet, whether it was arthritis, rheumatism, or what? A. Yes.

"And while you were off the employees took up a collection and sent it to you? A. One time I was off—yes, sir.

"When was that? A. That was in May, 1934."

It is patent from such testimony given by appellant before the Board, both upon his direct and cross-exami-

nation, in answer to the questions asked him that the question of limitation was clearly thereby raised upon the hearing before the Board and that it was treated by both the Board and the parties as having been thus made an issue in the case, just as if the question of limitation had been set out or expressly pleaded in the petition as one of the grounds relied on for review, as is directed and provided by Section 4935 of the Statute. The Board and parties alike having thus considered and treated the question of limitation as raised and dealt with on the hearing before the Board, as if pleaded, the trial court was authorized to likewise so treat it upon its review of the case, and base its decision thereon, as if set out in the petition for review. Harding v. Kentucky Title Trust Co., 269 Ky. 622, 108 S. W. (2d) 539.

Appellant was here required, in order to show himself entitled to recover compensation, not only to show by substantial evidence that he had suffered a compensable hernia injury under the conditions prescribed by Section 4884, Kentucky Statutes, in order to support the finding of the Compensation Board awarding him compensation therefor, but also that he had applied to the Board for compensation within the time and under the conditions provided by Section 4914, the pertinent parts of which are that:

"No proceeding under this act for compensation for an injury * * * shall be maintained * * * unless a claim for compensation with respect to such injury shall have been made within one year after the date of the accident. * * * If payments of compensation as such have been made voluntarily the making of a claim within such period shall not be required * * *."

While it may be conceded, at least arguendo, that the Compensation Board being a fact-finding body, its findings of fact are not to be disturbed where supported by any substantial evidence; that the testimony of appellant and his witness, Dr. Frey, when so measured, was sufficient to meet the burden of proof resting on him of showing that he had suffered the compensable injury for which compensation was asked; and that the trial court was therefore without authority to disturb the Board's award of compensation made appellant on that ground, we are equally and as strongly of the opinion that, it being admitted by appellant that he failed to file

his application for compensation with the Board within one year after the happening of the accident, or after there was a disagreement between him and his employer as to the payment of compensation, he failed by any substantial evidence either to show his compliance with that requirement or to bring himself within the excusing provision of Section 4914, by showing that payments of compensation, as such, were voluntarily made him, which were effective to toll the running of the statute during the period of their payment. Appellant insists that his employer's payment to him of his regular weekly wage, despite his frequent loss of time on account of his hernia and foot trouble, constituted payments to him in lieu of or as compensation and that these payments dated from the happening of his accident in January, 1934, to the later day of his discharge in May, 1936. We find, as did the trial court, that this latter claim is not supported by any substantial evidence, and therefore it follows that the Board's award made of compensation upon such claim, unsupported by any probative evidence, was, as adjudged by the trial court, erroneous.

The evidence for appellant on this point only tends to show that upon his employer's discovering that he was having much trouble with his feet, due to an arthritic condition and because of which he could at best but hobble about the plant in attempting to do his work, he told him (appellant) to stay at his work and that the company would try to take care of him by giving him easier work and pay him his regular wages, even though he would some weeks fail to work full time; also, that due to his distressing financial need and disabled condition, his employer took up a collection of money from appellant's fellow employees, looking to his relief. Further, the testimony of the employer and its witnesses as to this is to the effect that this effort to relieve the necessitous needs of appellant during this time, by enabling him to keep his employment, was prompted by purely humane and sympathetic considerations and that such help was in no wise intended to be or considered as payment to him of compensation.

In short, it is our conclusion that the Board's finding, based upon such evidence, that the employer, by reason of continuing to pay him his regular wages, was paying him compensation, was without the support of any substantial evidence and therefore could not have the

effect of excusing appellant's failure to file his application for compensation within the period prescribed by Section 4914, or was insufficient to bring him within its excusing provision, tolling the running of the statute where voluntary payments of compensation are made.

It follows, therefore, that we are led to conclude that the challenged judgment of the lower court, in ruling that plaintiff's case be remanded to the Board with the direction to dismiss his claim for compensation as barred by the statute, was authorized by the record.

Judgment affirmed.