## Hurt v. Crystal Ice & Cold Storage Company.

(Decided September 28, 1926.)

## Appeal from Boyd Circuit Court.

1. Usury—Purported Sale of Property at Iadequate Price with Provision for Resale to Vendor, Held in Effect Mortgage to Secure Usurious Loan (Ky. Stats., Section 2219).—Purported sale of property worth $16,000.00 to $20,000.00 for $8,000.00, with provision for resale to vendor for $10,400.00, payable in 5 years of monthly payments, held in effect mortgage to secure usurious loan, contrary to Ky. Stats., section 2219, since courts will look behind form of such transaction to its substance.

2. Usury—Where Sale and Resale of Real Estate was in Effect Mortgage, Vendor in Resale Agreement Held Entitled Only to Amount he Paid with Interest from Date of Loan, where Debt Became Due on Default in Monthly Payments.—Where sale of real estate and resale at higher price was in effect a mortgage, and entire debt under resale agreement became due on default in monthly payments, vendor in such agreement held entitled only to amount he paid for land with interest from date of loan.

3. Usury—Judgment for Borrower for Recovery of Bonus which he Claimed to have Paid Lender Held Properly Refused Under Conflicting Evidence.—Where sale of real estate and resale at higher price was in effect mortgage, judgment for borrower for recovery of bonus which he claimed to have paid lender held properly refused where lender denied such payment.

DYSARD & MILLER for appellant.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

In the year 1923 the Chesapeake & Ohio Railroad Company planned to build a new station at Ashland, and to this end bought a tract of land west of the old station. It then sold the houses on this land to the Salisbury Realty Company. The Salisbury Realty Company sold the Florentine Hotel and five other houses to Travis Hurt for $3,150.00 on October 30, 1923. Hurt paid down $1,150.00 and gave his note for $2,000.00, and by the contract was to pay the $2,000.00 before the houses were moved. On October 29, 1923, Travis Hurt bought of Dr. W. M. Salisbury a lot in Ashland to put the hotel on for $6,000.00. He paid Dr. Salisbury $3,000.00 down and Salisbury, on that day, executed to him a deed which was

duly recorded. On January 7, 1924, Dr. Salisbury, who was the president and general manager of the Crystal Ice & Cold Storage Company, and Travis Hurt went to the office of S. S. Willis, an attorney at Ashland, and had Mr. Wills to prepare two deeds, by the first of which Hurt and wife conveyed the lot above referred to to the Crystal Ice & Cold Storage Company in consideration of $8,000.00; by the second deed the Crystal Ice & Cold Storage Company conveyed the property back to Travis Hurt in consideration of $10,400.00, evidenced by sixty notes, each for $173.00, and payable monthly from that date, the last note being payable in five years. In this deed it was stipulated that before it became effective Hurt should move the hotel to the lot, and it was also stipulated that if Hurt failed to pay any note at maturity all the notes should become due. The deed to the Crystal Ice & Cold Storage Company was then recorded. The other deed was left in Mr. Willis' hands to be delivered when its conditions were complied with. When they came to divide the $10,400.00 into sixty parts it appeared that each note should be executed for $173.33 1/3, but Dr. Salisbury said, "Just drop off the cents and make it even money." So the notes were thus executed and left in Mr. Willis' hands until the hotel was moved. Willis then took out the amount of three of the notes, $519.00, and gave Hurt a check for $2,436.00, which was the balance of $8,000.00, after taking out Dr. Salisbury's three notes, which with interest amounted to $3,045.00, and the $2,000.00, which was paid to Hurt on January 8th, which had to be paid to the realty company before the houses were moved. Hurt paid three of the other monthly notes. He failed to pay the note due August 8th when due. Three days later the ice and cold storage company notified him that it elected to treat the whole sum as due and placed the notes in the hands of Mr. Willis for collection. On August 12, 1924, this suit was filed. Hurt filed answer pleading that the transaction was the borrowing of money; that the contract was usurious and praying that the usury be purged. The allegations of the petition were denied and on final hearing judgment was entered in favor of the plaintiff for the amount claimed. Hurt appeals.

Dr. W. M. Salisbury is a large property owner in Ashland and was mayor of the city; Travis Hurt is a negro who had accumulated some property. His testimony

is in substance this: About thirty days after he bought the property he found that he did not have the money to pay the Realty Company the $2,000.00, which had to be paid before he moved the houses, and that he would probably have to borrow the money. He went to see Mr. Leffingwell, who had charge of the realty company, and he wanted a ten per cent bonus. He then went to see Dr. Salisbury and he told him he thought he could get him the money for less than that, or at eight per cent for five years, to be secured by a mortgage on the property, and they then went to Mr. Willis and had the papers drawn on January 7, and that no thought of selling the property was in his mind and this was never mentioned to him. On the other hand Dr. Salisbury testifies that he purchased the property from Hurt for $8,000.00, to be paid when the houses were placed upon the ground, because Hurt needed some money to complete his work and move the houses upon it. But he does not state any fact or circumstance showing any bargaining between him and Hurt or any chaffering over the price. He says the property was worth sixteen thousand dollars; Hurt says it was worth twenty thousand dollars, and it is hard to believe that when both of them so understood the value of the property that either of them really thought that the transaction really was a sale. The deeds were drawn at the same time by the same lawyer and the negro might very well have understood that this was only a form of mortgaging the property. The interest on $8,000.00 for one year at six per cent is $480.00, for five years it would be $2,400.00, which, added to $8,000.00, would make just $10,400.00, the amount stated in the deed. and all of them agree that the odd cents were knocked off in writing the notes. They all agree that Hurt had to have $2,000.00 before he could move the hotel; they all agree that the $2,000.00 was paid then and the hotel was moved. The remainder of the $8,000.00 went to pay off the liens on the property and interest, except the final payment of $2,430.00, which was made to Hurt after the hotel was moved. Hurt was the owner of the property; he was not proposing to sell it, he was trying to borrow $2,000.00 which he had to have. The rule applied by the courts in such cases is thus stated:

> "The cupidity of lenders and the willingness of borrowers to concede whatever may be demanded or to promise whatever may be exacted in order to ob-

tain temporary relief from financial embarrassment, as would naturally be expected, have resulted in a great variety of devices to evade the usury laws; and to frustrate such evasions the courts have been compelled to look beyond the form of a transaction to its substance, and they have laid it down as an inflexible rule that the mere form is immaterial, but that it is the substance which must be considered. No case is to be judged by what the parties appear to be or represent themselves to be doing, but by the transaction as disclosed by the whole evidence, and if from that it is in substance a receiving or contracting for the receiving of usurious interest for a loan or forebearance of money, the parties are subject to the statutory consequences, no matter what device they may have employed to conceal the true character of their dealings." 27 R. C. L., p. 211.

"When a vendor sells property at a clearly inadequate price, reserving an option to repurchase at a price greater than the original price with lawful interest, such contract will be regarded, not as an absolute sale, but as in effect a mortgage to secure a usurious loan." 29 Cyc. 930. To the same effect see the following Kentucky cases: Heytle v. Logan, 1 A. K. M. 529; Grimes v. Shrieve, 6 T. B. M. 553; Butt v. Bondurant, 7 T. B. M. 421; Emig v. Mutual Benefit Co., 127 Ky. 588; Williams v. Eagle Bank, 172 Ky. 541.

Applying the rule here, the court cannot without shutting its eyes to the truth, fail to see that the form of this transaction was but a device to evade the statute against usury, which is in these words:

"All contracts and assurances made, directly or indirectly, for the loan or forebearance of money, or other thing of value, at a greater rate than legal interest, shall be void for the excess over the legal interest." Kentucky Statutes, section 2219.

The original contract, if carried out, was oppressive and usurious. Although Hurt was to make his payments monthly he was required to pay in all $10,400.00, which would have been the whole amount that he owed if he had paid nothing until the last day of the five years. In other words, in this way the company received in the first year one-fifth of its debt and yet Hurt paid it interest on

this money for the other four years. This was equally true of each of the other years and made the rate of interest that he was paying more than ten per cent.

Not only so, but after the contract had run for eight months the company elected to treat all the notes as due and to collect the full face amount of the notes then, and yet to incude in the collection the interest for more than four years which was unearned. The just rule applicable in such cases is thus stated in 27 R. C. L., p. 234:

"Under the principles laid down in the two preceding paragraphs, a provision in an agreement for the payment of money which accelerates the maturity of the debt on default in payment of either interest or an installment of principal does not constitute usury. It entitles the lender on default only to the principal and the interest then accrued. If the accelerative provision is differently construed, the contract in some jurisdictions is thereby rendered usurious." 27 R. C. L. 234. To same effect see Maxwell v. Jacksonville, &c., Co., 45 Fla. 425; Tipton v. Ellsworth, 18 Idaho 207; Moore v. Cameron, 93 N. C. 57; Dugan v. Lewis, 79 Tex. 246.

Travis Hurt stated that he paid Dr. Salisbury $800.00 as a bonus for procuring the loan. This Dr. Salisbury denied, and the circuit court did not err in refusing Hurt a judgment under the evidence on this branch of the case. But on the question of usury the judgment should have been entered in favor of the bank for its debt of $8,000.00, with interest from January 7, 1924, subject to the different credits afterwards paid upon the debt, counting the interest as in other cases of partial payments.

Judgment reversed and cause remanded for a judgment as above indicated.