**In re Helen Gay MILLER, Debtor.**

**Helen Gay MILLER, Plaintiff,**

v.

**HLT CHECK EXCHANGE and Larry York, Defendants.**

Bankruptcy No. 96–71011.
Adversary No. 97–7005.

United States Bankruptcy Court,
E.D. Kentucky,
Pikeville Division.

Dec. 18, 1997.

Addison Parker, Waco, KY, for Plaintiff.

Daniel Danford, Lexington, KY, for Defendants.

## MEMORANDUM OPINION

WILLIAM S. HOWARD, Chief Judge.

The debtor, plaintiff in this adversary proceeding, challenges the practices of defendants HLT Check Exchange ("HLT"), a check cashing service, and Larry York, its owner, in regard to the fees HLT charges. She has filed a Complaint to Recover Damages for Federal and State Consumer Credit Disclosure Violations and for Usury and Consumer Protection Violations. The defendants, in response, have filed a Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(B)(6). This matter is now before the Court on that Motion. This Court has

jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b); the plaintiff has alleged that it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

The plaintiff filed her Chapter 13 petition in this Court on October 29, 1996. HLT filed a claim for $600.00 for a returned check marked "NSF." The charges imposed by the defendant were of two kinds: first, a "service charge" when the plaintiff first cashed her check which was to be held by the defendant for two weeks, and second, an identical charge to renew the transaction for another two weeks when the plaintiff was unable to make good on the check at the end of the original two week period. While KRS 368.100 seems to contemplate the first charge, it is the second charge on the same check which is much more troubling and all of the following analysis relates to these deferral or "renewal" charges.

The statute appears to have been written in contemplation of the cashing of third party checks such as payroll checks for persons who do not have a bank account and consequently often have problems cashing checks at any bank other than the bank upon which the check is drawn. The plaintiff maintains that this claim is excessive, and should be disallowed to the extent it is subject to the defenses, offsets and counterclaims which she sets out. These include allegations that the transactions performed by HLT are subject to the disclosure requirements of the Federal Truth in Lending Act, 15 U.S.C. § 1604 and Regulation Z, 12 CFR § 226.4; that the transactions are governed by the disclosure requirements of KRS 360.210 et seq.; that the fees and charges are usurious pursuant to KRS 360.010 and 360.020; and that HLT's fees and charges and its threatening the plaintiff with criminal prosecution for failure to timely "pick up" her checks are unconscionable and a violation of the Kentucky Consumer Protection Act. KRS 367.170, the Consumer Protection Act, defines unlawful acts as unfair, false, misleading, or deceptive, and unfair is construed to mean unconscionable. Underlying the majority of the plaintiff's allegations is the characterization of the various fees and charges as "interest."

A motion to dismiss made pursuant to FRCP 12(b)(6), made applicable in bankruptcy by FRBP 7012(b), is for failure to state a claim upon which relief can be granted. As set out in *In re Natale,* 136 B.R. 344 (Bkrtcy. E.D.N.Y.1992), the court, in determining such a motion

must presume that the factual allegations of the complaint are true and all reasonable inferences are to be made in favor of the nonmoving party. *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). The purpose of a motion to dismiss is to assess the legal sufficiency of a complaint, not to judge the weight of evidence which might be offered in its support. *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2nd Cir.1980).

However, on a motion to dismiss, it is clear that the court does not have to accept every allegation in the complaint as true in assessing its sufficiency. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 311–18 (2d ed.1990). The allegations of a complaint must be "well-pleaded" and thus the court need not accept "sweeping and unwarranted averments of fact." *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987). Legal conclusions, deductions or opinions couched as factual allegations in a complaint are not given a presumption of truthfulness. 2A James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.07[2.–5], at 12–63 to 12–64 (2d ed.1991). A complaint is subject to dismissal if it fails to allege a required element which is necessary to obtain relief sought. Moore, *supra,* at 12–68; (cite omitted). A motion under Fed. R.Civ.P. 12(b)(6) should also be granted if a bar to relief is apparent from the face of the complaint. Moore, *supra,* at 12–68 to 12–69.

At 348. The Court's task under Rule 12(b)(6) is then to determine the sufficiency, and not the merits, of the Complaint. *See also In re Harvard Knitwear, Inc.,* 153 B.R. 617 (Bkrtcy.E.D.N.Y.1993), and *In re DeLorean Motor Co.,* 991 F.2d 1236 (6th Cir.1993). The Court will analyze the sufficiency of each of the plaintiff's causes of action:

### 1. Applicability of TILA

█ The Court will first consider whether the federal Truth In Lending Act ("TILA") is applicable here. The primary question to be addressed is whether the fees charged by HLT can be characterized as "finance charges." The plaintiff points out that TILA, and specifically 15 U.S.C. § 1605(a)(2) and Regulation Z, 12 CFR § 226.4(b)(2), include service charges among the many definitions of finance charges. The plaintiff contends that the fees charged by HLT are service charges and so fit within the definition of finance charges. The defendants' primary argument with respect to TILA concerns whether it preempts state law. They argue that TILA regulates disclosure of credit terms but not the extension of credit itself. Therefore, it cannot preempt state law with respect to the characterization of a particular transaction.

One of the cases cited in support of the defendants' position is General Elec. Capital Auto Lease, Inc. v. Mires, 788 F.Supp. 948 (E.D.Mich.1992). According to the defendants this case stands for the proposition that TILA preempts existing state law with respect to the types of credit disclosures required, but does not otherwise preempt state law. This case is about whether allegations of violation of TILA provide a basis for removal to federal court. The court stated:

> In the instant case, Mires and Kus have asserted a **cause of action** under the TILA. The Congressional declaration of purpose indicates that it intended to assure meaningful disclosure to consumers on the use of credit and the terms of leases for personal property. 15 U.S.C. § 1601. Absent in the statute are any provisions which purport to demonstrate the preemption of state **causes of action.** (Emphasis added.)

At 950. It seems clear that this case is not about preemption of state law, but about whether TILA causes of action must be brought in federal court. That is not the question before this Court. Another of the defendants' cited cases is based on the same reasoning in regard to state law claims or causes of action as opposed to federal ones, and the applicability of TILA as a basis for removal. Walker v. Commercial Credit Corp., 192 B.R. 260 (M.D.Ala.1996).

A specific exclusion from TILA's definition of credit, insurance premiums paid in installments, was at issue in Kuhfeldt v. Liberty Mutual Insurance Company, 833 F.Supp. 632 (E.D.Mich.1993), and it, too, is not instructive here. Fairley v. Turan–Foley Imports, Inc., 65 F.3d 475 (5th Cir.1995), is cited by the defendants for the proposition that "[s]tate law determines when a contractual obligation is created that binds the consumer to credit terms." At 480. This Court would certainly not disagree with that statement. The fact that the defendant had extended credit terms to the plaintiff was a given in the Fairley case, however, and the court there found that the plaintiff was entitled to TILA protections. The issue before the court was whether a contract for the purchase of an automobile had been consummated.

A case relied on by both the plaintiff and the defendants is Nussbaum v. Mortgage Service America Co., 913 F.Supp. 1548 (S.D.Fla.1995). There the court considered whether Florida's intangible tax had to be disclosed as a component of the finance charge in connection with extending credit in a mortgage transaction. The court acknowledged that it

> must explore the nature, position, and characteristics of Florida's intangible tax as enacted by the Florida legislature to determine whether the imposition of this tax falls under one of TILA or Regulation Z's designated exceptions to the definition of a finance charge. To make these interpretations, the Court must interpret Florida law.
>
> In cases controlled by state law, federal courts are bound to follow the decisions of the highest court of the state. .... If the highest state court has not addressed the issue, federal courts should ascertain and apply state law as pronounced by intermediate state appellate courts. ....
>
> Although bound to follow Florida law as interpreted by the Florida courts on issues of Florida law, we face a peculiar situation in this case, for we are also bound to follow the Eleventh Circuit. Many of the exact

issues raised by MSA in their motion to dismiss were addressed by the Eleventh Circuit in *Rodash v. AIB Mortgage,* 16 F.3d 1142 (11th Cir.1994). In that

case, the Court held that Florida's intangible tax should have been disclosed as a component of the finance charge in the TILA document because it was a charge paid directly by the consumer and the Court held that no exclusions were applicable. . . . .

At the time *Rodash* was decided, however, neither the Supreme Court of Florida nor an intermediate court in Florida had addressed these TILA issues. More recently, however, a Florida intermediate appellate court ruled on the issues decided in *Rodash* and came to the opposite conclusion. . . . (Cites omitted.)

At 1554.

This discussion is instructive, as it makes it clear that this Court is directed to apply the law as enunciated by the highest court of this state. The Kentucky Supreme Court has apparently not ruled on whether check cashing fees and charges are subject to TILA disclosures, however, and neither has an intermediate appellate court. This Court is therefore without guidance as to what position Kentucky courts would take on this question, the defendants' reliance on an affidavit of the acting general counsel of the Department of Financial Institutions notwithstanding. This Court is in the same position that the *Rodash* court was until Florida state courts ruled on TILA's application to the intangible tax.

As for the substance of the *Nussbaum* case, the Court finds it to be more supportive of the plaintiff than the defendants. The *Nussbaum* court held that Florida's intangible tax is exempt from disclosure as a finance charge because it is a fee imposed by the state for the perfection of a security interest. This exclusion is found in 12 C.F.R. § 226.4(e)(1) concerning "[t]axes and fees prescribed by law that actually are or will be paid to public officials for ... perfecting ... a security interest." This was the conclusion of the Florida intermediate appellate court above referenced in *Pignato v. Great Western Bank,* 664 So.2d 1011 (Fla.App. 4 Dist.

1995), and the *Nussbaum* court followed it. Again, a case in which TILA is found not to apply because the fee or charge falls within some specific exclusion is not helpful to the defendants here. The Court should perhaps point out that the defendants have never argued that the check cashing fees and charges fall within some specific TILA exclusion.

■ The defendants have consistently argued that the significant statutory language precludes the possibility of TILA application, but, as set out above, no Kentucky court has ruled on this issue. This Court is of the opinion that the statutory characterization of the fees and charges as "service charges" rather than "interest" is not fatal because the definition of finance charge under TILA and Regulation Z is very broad. It includes a variety of charges incident to the extension of credit. Further, for the defendants to argue that they are not extending credit is disingenuous. They are disbursing funds to people like the plaintiff on the promise of repayment of the sum plus the "service charge," at a later time. If this is not an extension of credit, this Court finds it hard to imagine any transaction that is. This Court therefore finds that the defendants are not entitled to dismissal on the issue of whether they are required to disclose credit terms pursuant to TILA.

2. *Disclosure of Finance Charges pursuant to KRS 360.210 et seq.*

Having found that TILA is applicable herein, and that the fees and charges at issue are fairly characterized as finance charges, the Court also finds that the Kentucky credit disclosure statute, KRS 360.210 et seq., is applicable. The defendants are therefore not entitled to dismissal on this issue.

3. *Usury*

■ Since the fees and charges at issue here may be classified as finance charges, they are subject to the usury statute, KRS 360.010 and 360.020. Any finance charge that the defendants required the plaintiff to pay in order to complete her transactions with them which was in excess of the legal rate of interest was usurious. The defen-

dants are therefore not entitled to dismissal on this issue.

### 4. *Unconscionability and consumer protection*

 Consideration of this issue centers on the defendants' use of the threat of prosecution under the so-called "bad check" law, KRS 514.040(1)(e). The plaintiff maintains that employing such a threat is unfair, false, and misleading pursuant to the Kentucky Consumer Protection Act, KRS 367.170. The parties have argued this issue in terms of whether KRS 514.040(1)(e) applies when a check is post-dated. Both sides cite *Rice v. Commonwealth*, 621 S.W.2d 911 (Ky.1981), in support of their respective positions. The defendants also cite *Martin v. Commonwealth*, 821 S.W.2d 95 (Ky.App.1991). Both these cases stand for the proposition that it is "the intent of the alleged wrongdoer when the property is obtained [which] governs instead of the intent when a check is given." *Martin, supra* at 97.

It is apparent that intent governs the disposition of any prosecution under KRS 514.040(1)(e), and therefore the question remains whether any particular check cashing transaction might be prosecutable. The parties' engaging in the practice of holding post-dated checks would be one element to consider, and the possibility of a successful prosecution cannot be rejected out of hand. The defendants have not demonstrated, however, that as a matter of law the plaintiff has failed to state a claim upon which relief can be granted in regard to this issue, and they are not entitled to dismissal.

Based on the criteria set out above, that the factual allegations of the Complaint are presumed to be true, that all reasonable inferences are made in favor of the plaintiff, and that the Complaint is well pleaded, the Court finds that the plaintiff's Complaint is sufficient to state a claim for relief upon each of her individual causes of action. The Court will therefore overrule the Motion to Dismiss. An order in conformity with this opinion will be entered separately.