**Patricia A. TURNER, Plaintiff,**

v.

**E–Z CHECK CASHING OF COOKEVILLE, TN, INC., Defendant.**

No. 2–97–0062.

United States District Court, M.D. Tennessee, Northeastern Division.

Jan. 26, 1999.

Mary Dee Allen, Drake & Perkins, Cookeville, TN, Samuel J. Harris, Cookeville, TN, for Patricia A. Turner, plaintiff.

Charles Wayne Cagle, Winston N. Harless, Lewis, King, Krieg, Waldrop & Catron, P.C., Nashville, TN, for E–Z Check Cashing of Cookeville, TN, Inc., defendant.

## ORDER

ECHOLS, Chief Judge.

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment (Document Entry No. 12), to which Defendant has responded (Document Entry No. 19). Also pending is Defendant's Request for Oral Argument Regarding Plaintiff's Motion for Summary Judgment (Document Entry No. 22). Because the facts and legal arguments are thoroughly presented in the briefs and record, and the decisional process would not be significantly aided by oral argument, Defendant's Request for Oral Argument is hereby DENIED.

For the reasons discussed in the Memorandum contemporaneously entered herewith, the Plaintiff's Motion for Partial Summary Judgment is hereby GRANTED.

It is so ORDERED.

## MEMORANDUM

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment (Document Entry No. 12), to which Defendant has responded (Document Entry No. 19). Also pending is Defendant's Request for Oral Argument Regarding Plaintiff's Motion for Summary Judgment (Document Entry No. 22). Because the facts and legal arguments are thoroughly presented in the briefs and record, and the decisional process would not be significantly aided by oral argument, Defendant's Request for Oral Argument is hereby DENIED. For the reasons discussed herein, Plaintiff's Motion for Partial Summary Judgment is hereby GRANTED.

This case involves a series of "deferred presentment" ("check-cashing") transactions in which Plaintiff alleges Defendant E–Z Check Cashing of Cookeville, TN, Inc. (hereinafter EZ) violated certain provisions of the Truth in Lending Act, 15 U.S.C. §§ 1601–93 (1994) (hereinafter TILA or Act); Federal Reserve Board Regulation Z, 12 C.F.R. § 226 (hereinafter Regulation Z); and the Tennessee Consumer Protection Act, TENN. CODE ANN. §§ 47–18–101 – 5002 (1995) (hereinafter TCPA). Plaintiff now moves for summary judgment on the issue of whether Defendant is liable under these statutes and regulations. Defendant argues it cannot be held liable as it is not in the "lending" business and is not subject to TILA.

## I. FACTS

The undisputed facts are as follows. Plaintiff is a forty-seven-year-old woman from Cookeville, Tennessee with an eighth-grade education. She sorted jeans in a garment factory until she was laid off. She now lives with her mother and recently filed for bankruptcy.

Defendant corporation E–Z Check Cashing is co-owned and managed by Ricky Edwards, a pipe-fitter before entering the check-cashing business. Mr. Edwards operates four check-cashing businesses, three of which also perform pawn brokerage, and he trains the employees who are designated "loan officers" on the check-cashing agreements used in his businesses.

The "check-cashing" transactions conducted by EZ are different from the usual "check-cashing" transactions at a bank. The "check-cashing" transactions conducted by EZ are described as "deferred presentment" transactions in which a customer writes a check to EZ in an amount which includes (1) a principal amount the customer receives immediately in cash, plus (2) an additional "service fee" to be collected at least thirty days later.[1] At the end of the thirty-day period, the customer may (1) repay the principal amount and service fee and retrieve his uncashed check, (2) pay only the service fee and write a new check for the principal amount and service fee, or (3) allow the business to deposit the original check.

Before agreeing to "cash a check" for a customer, EZ checked the customer's check-writing history through two national databases and required the customer to provide references. If a customer had no outstanding bad checks and was otherwise deemed acceptable, EZ would "cash" the check. This meant simply that EZ would advance the customer cash in the amount of the principal portion of the check, and hold the check for thirty days. It cost EZ forty-five cents per check to check Plaintiff's check-writing history.

The Tennessee legislature passed the Deferred Presentment Services Act, TENN.CODE ANN. § 45–17–101–19 in 1997. Prior to this time, most "check-cashing" businesses in this state did not disclose in writing to their customers the costs associated with "cashing checks" there.[2] EZ, however, did provide this information in writing to its customers.

---

1. Two percent is the standard maximum charge for "check-cashing" where deferred presentment is not involved, and courts have found that 2% is adequate to cover the overhead in this industry. *See Wernly v. Anapol [t/a America Check Cashing],* 91 B.R. 702, 703 (Bankr.E.D.Pa.1988). The "service fee" Defendant charged Plaintiff was $35.00 per $100.00 for a thirty-day period.

2. The Deferred Presentment Services Act took effect May 22, 1997 for the purpose of promulgating rules; it became generally effective on October 1, 1997. The law has since been repealed, effective October 1, 1999. TENN.CODE ANN. § 45–17–101 (1997).

Before EZ "cashed" checks for its customers, they were required to sign Agreements providing that the customer would repay the face amount on the check, which included the amount of the initial cash advance, plus the service fee, at the end of thirty days or pay an additional service fee in the same amount at the end of thirty days. If the customer failed to repay the full face value of the check in cash, EZ would deposit the check.[3] A "Good Faith Estimate of Settlement Charges" was appended to the Agreement. EZ described the transaction as a loan in the estimate document, and Mr. Edwards termed it as a "loan" in his deposition.

Plaintiff's series of transactions with EZ began on July 2, 1996, when she borrowed $300.00 pursuant to a "check-cashing" Agreement. The transaction can be summarized as follows: Plaintiff wrote a check to EZ for $405.00, which included the $300.00 cash advancement to Plaintiff, plus $105.00 in service fees.[4] At the end of thirty days, Plaintiff could either pay EZ $105.00 in cash and provide another check in the amount of $405.00 (to be held for the next thirty days) or do nothing, at which time EZ would deposit the original $405.00 check, in settlement of the principal amount of the cash advanced originally and the associated charges. On July 31, the due date, Plaintiff chose to pay a service charge of $105.00 and to defer payment on the principal ($300.00) for an additional thirty days. She did so again and again for each of the following seven months, thus deferring deposit of her $405.00. Through these transactions, Plaintiff paid EZ $840.00 over an eight-month period.

Finally, on April 4, 1997, Plaintiff failed to pay the $105.00 service fee, and EZ deposited her $405.00 check. When that check was dishonored because her bank account had been closed, Mr. Edwards wrote Plaintiff a letter dated April 11, 1997, threatening her with criminal prosecution unless she reimbursed EZ for the amount of the returned check ($405.00), plus a check recovery fee of ten percent of the check amount ($81.00). The letter advised Plaintiff she had violated state law and EZ would "have a warrant issued for violation of worthless check law" if she did not reimburse EZ for the returned check and the check recovery fee.

In May, 1997, Plaintiff filed a Chapter 7 Bankruptcy petition in this district. On June 19, 1997, she filed this action alleging Defendant violated TILA, Regulation Z, and the TCPA. With regard to the TILA claim, Plaintiff alleges EZ failed (1) to provide the required disclosures pursuant to consummation of each transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b); (2) to make the required disclosures conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a); (3) to properly disclose the finance charge, in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d); and (4) to state accurately the annual percentage rate ("APR"), in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z § 226.18(c), by failing to calculate the APR as directed in 15 U.S.C. § 1606 and Regulation Z § 226.22. With regard to the TCPA claim, Plaintiff alleges EZ's acts and omis-

---

**3.** Mr. Edwards explained in his deposition that this deferred check-cashing process is "[j]ust like going to the bank ... [to] pay a bank note off." As with a bank loan, however, EZ's customers are not "required to pay the full amount off in full (sic) before they refinance." (Document Entry No. 10, Edwards' Dep. at 36). Edwards also compared the transactions to credit card charges. (*Id.* at 66).

**4.** The "Check Cashing Disclosure" form provided to each customer monthly, states that the disclosures "are to show Full Disclosure and Truth–in–Lending Act." The "Good Faith Estimate of Settlement Charges" form attributes $99.00 of the fee charged to the customer to "Investigating Checking account [the $.45 per check charge discussed above], Administrative

and Regulatory Compliance [employee time explaining forms to customer, and state licensing fees totalling $500.00 per year], Check Guarantor Insurance [never purchased for this Plaintiff and never available except in Defendant's sole discretion], *Closing the Loan,* [and] Expenses [payroll, overhead, rent, insurance, maintenance, software upgrades, consulting fees, attorneys' fees], Losses, and All Other Services" (emphasis added). The "Good Faith Estimate of *Truth in Lending Disclosures*" form states the annual percentage rate is 24%; the *"Amount Financed"* is $300.00; the *"Finance Charge"* is $6.00; and "Other Charges" are $99.00. The Agreement's signature line provides that Defendant's agent is a *"loan officer"* and Plaintiff signed at a line which states she is a *"borrower."*

sions constitute unfair or deceptive and/or unconscionable trade practices in violation of TENN.CODE ANN. §§ 47–18–104(b)(12) and 47–18–104(b)(27), particularly in threatening criminal action without a proper basis and contrary to law and in providing misleading Truth–in–Lending Disclosure Statements. Plaintiff now moves for partial summary judgment on the basis of the above undisputed facts, asking the Court to find as a matter of law that EZ violated TILA, Regulation Z, and the TCPA.

## II. STANDARD OF REVIEW

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. If so, summary judgment dismissal is inappropriate.

## III. PLAINTIFF'S TILA CLAIM

■ TILA is a comprehensive regulatory scheme intended to deter the predatory extension of credit which can disrupt the national economy and increase the personal bankruptcy rate. *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). Its provisions are intended to aid the unsophisticated consumer in determining the total costs of financing. *Highsmith v. Chrysler Credit Corp.*, 150 B.R. 997, 1000–01 (N.D.Ill.1993), *aff'd in part, rev'd in part*, 18 F.3d 434 (7th Cir.1994). One of its primary mechanisms for accomplishing this is the requirement of "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

■ Because TILA is a remedial act designed to protect consumers, courts construe it liberally in favor of consumers. *See e.g. Johnson v. McCrackin–Sturman Ford, Inc.*, 527 F.2d 257, 262 (3rd Cir.1975); *Thomas v. Myers–Dickson Furniture Co.*, 479 F.2d 740, 748 (5th Cir.1973). They focus on the substance, not the form, of credit-extending transactions. *Meyers v. Clearview Dodge Sales, Inc.*, 384 F.Supp. 722, 728 (E.D.La. 1974), *aff'd in part, rev'd in part*, 539 F.2d 511 (5th Cir.1976), *cert. denied*, 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977).

Before determining whether Defendant has violated TILA's disclosure provisions as Plaintiff alleges, the Court must first determine whether check-cashing businesses are subject to TILA requirements. The resolution of that question depends on the definitions of "credit," "creditor," and "consumer" under TILA. TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). A "creditor" is a person who (a) regularly extends consumer credit for which payment of a finance charge may be required and (b) is the person identified as payee on the face of the evidence of indebtedness. 15 U.S.C. § 1602(f). The adjective "consumer," used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1602(h).

Courts that have addressed the issue have held, without exception, that deferred presentment transactions are extensions of "credit" under TILA. *Hamilton v. York [d/b/a HLT Check Exchange]*, 987 F.Supp. 953 (E.D.Ky.1997); *Miller v. HLT Check Exchange*, 215 B.R. 970 (Bkrtcy.E.D.Ky.1997). As the *Hamilton* court explained, deferred

presentment transactions are "nothing more than interest[-]bearing loans," *id.* at 955; "It is hard to imagine how charges for exchanging money today for more money at a later date could be classified as anything but interest on a loan," *id.* at 956, n. 4; where plaintiffs incur debt and defer its payments, the transactions "fall under the language in 15 U.S.C. § 1602(e) –(f)," *id.* at 958.[5] The *Miller* court found that it is disingenuous for check-cashing businesses to argue they are not extending credit. "They are disbursing funds to people like the plaintiff on the promise of repayment of the sum plus the 'service charge,' at a later time. If this is not an extension of credit, this Court finds it hard to imagine any transaction that is." *Id.* at 974.

■ Following *Miller* and *Hamilton,* this Court finds that "deferred presentment" transactions, such as the "check-cashing" transactions here, are extensions of credit. Thus EZ's check-cashing activities are subject to the provisions of TILA and the regulations promulgated thereunder.

■ The Court next examines whether E–Z Check Cashing is a "creditor" within the meaning of the Act. TILA intended to exempt only those lenders whose extensions of credit are an occasional, isolated, and incidental portion of their business. *Eby v. Reb Realty, Inc.,* 495 F.2d 646, 648 (9th Cir.1974). *See McGowan v. Credit Center of North Jackson, Inc.,* 546 F.2d 73 (5th Cir.1977) (holding loan brokers and lenders are creditors under the act who must make required disclosures before effecting a credit transaction). Other courts which have addressed the issue are unanimous in holding that those who participate in the deferred presentment/check-cashing business are "creditors" for TILA purposes. *Hamilton,* 987 F.Supp. at 958; *Miller,* 215 B.R. at 974. *See also*

*Leffew v. Kugler [and First Southern Cash Advance],* 220 B.R. 598 (E.D.Tenn.1998) (suggesting bankruptcy trustee has standing to bring TILA action against check-cashing business).

■ It is undisputed that the essence of EZ's business is to earn a profit from engaging in a check-cashing deferred presentment scheme with the public, which, as discussed above, involves extensions of credit. Therefore, the Court further finds that EZ is a "creditor" within the meaning of TILA.

■ To fall within TILA, the so-called deferred presentment transactions must be considered to be "consumer transactions." Thus, the money advanced must be loaned to a natural person and it must be loaned for personal, family, or household purposes, rather than for business or commercial purposes. In this case, it is undisputed that Plaintiff is a natural person. She has an eighth-grade education. At the time of the deferred presentment transactions she had neither an established business nor the prospects of developing one. There is no evidence to suggest that Plaintiff suggested to Defendant any commercial purpose for the cash advancement. Certainly it would not be reasonable to assume the $300.00 she borrowed from EZ, in light of her other liabilities,[6] would have been sufficient to start or continue a commercial enterprise. Furthermore, EZ's disclosure statement says on its face it is a "Truth–in–Lending Disclosure Statement" given "to show Full Disclosure and Truth–in–Lending Act." This evidence indicates that EZ considered this transaction to be a personal loan. Under these facts and circumstances, the Court finds Plaintiff sought a loan for personal purposes as defined by TILA and that this transaction was

---

**5.** With regard to lending transactions, courts are required "to look beyond the form of a transaction to its substance, and they have laid it down as an inflexible rule that the mere form is immaterial, but that it is the substance which must be considered. No case is to be judged by what the parties appear to be or represent themselves to be doing, but by the transaction as disclosed from the whole evidence; and, if from that it is in substance a receiving or contracting for the receiving of usurious interest for a loan or forbearance of money the parties are subject to the

statutory consequences, no matter what device they may have employed to conceal the true character of their dealings." *Hamilton,* 987 F.Supp. at 955–56 (quoting *Hurt v. Crystal Ice & Cold Storage Co.,* 215 Ky. 739, 286 S.W. 1055, 1056–57 (1926)).

**6.** At the time Plaintiff filed for Chapter 7 bankruptcy, she had a total of fourteen creditors and $19,435.13 in total liabilities.

a "consumer" credit transaction under the Act.

Having concluded that the parties and transactions here are subject to TILA, and therefore to Regulation Z, the Court next addresses the question of whether, based upon the undisputed material facts, Plaintiff is entitled to summary judgment on the issue of the alleged TILA violation by Defendant.

## A. 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b)

TILA and the regulations of the Federal Reserve require creditors to provide borrowers certain information before extending credit. 15 U.S.C. § 1638(b); 12 C.F.R. § 226.17(b). Additionally, TILA specifies that the prerequisite information, except for the creditor's identity, be "conspicuously segregated from all other terms, data, or information provided in connection with a transaction, including any computations or itemization." 15 U.S.C. § 1638(b). Information that must be segregated includes the following: the "amount financed;" the "finance charge;" the finance charge expressed as an APR (if it exceeds a statutory minimum); the "total of payments," consisting of the sum of the amount financed and the finance charge; the number, amount, and due dates or period of payments required to repay the total; in a sale of property or services, the "total sale price;" descriptive explanations of the terms "amount financed," "finance charge," "annual percentage rate," "total of payments," and "total sale price" as specified by the Board of Governors of the Federal Reserve System; any security interest taken by creditor; any dollar charge or percentage amount which a creditor may impose on account of late payment, other than a deferral charge; a statement indicating whether consumer is entitled to a rebate of any finance charge upon refinancing or prepayment in full, if the obligation involves a precomputed financing charge, or, alternatively, a statement indicating whether or not a penalty will be imposed if the obligation involves a finance charge computed from time to time by application of a rate to the unpaid principal balance; a statement referring consumer to the appropriate contract document for information regarding nonpayment, default, acceleration rights, and prepayment rebates and penalties. 15 U.S.C. § 1638(b).

Additional information required by § 1638(b) includes: certain life, accident, or health insurance premiums included in the finance charge; property damage and liability insurance premiums included in the finance charge; fees and charges prescribed by law to be paid concerning security interests; premiums paid for insurance in lieu of perfecting any security interest otherwise required; and any tax levied on security instruments or documents evidencing indebtedness if payment is a precondition for recording a security interest. 15 U.S.C. § 1605.

■ As noted, EZ is a creditor under TILA and thus required to make these disclosures in writing. EZ does not dispute that the documents Plaintiff presents as evidence of the transactions are the ones EZ provided. Each transaction is evidenced by a "Check Cashing Disclosure" and an "Agreement." The "Check Cashing Disclosure" attempts to comply with TILA, and conspicuously segregates from all other information the "amount financed," the "finance charge," the APR, and the "total of payments," among other items. The "annual percentage rate," listed at 24%, would have been accurately calculated if the "finance charge" of $6.00 were the interest charged on the principal balance of $300.00. As discussed below, however, Defendant assessed finance charges of $105.00 per month.

This conclusion is supported by an examination of EZ's disclosure form, particularly the "total of payments" section. The Act requires that this "total" consist of the sum of the amount financed and the finance charge. Here, the amount financed is stated to be $300.00 and the amount of the finance charge is stated to be $6.00. However, EZ lists the "total of payments," as $405.00, a difference of $99.00. The $99.00 difference must, under the Act, be either principal or finance charge. Clearly, it is not principal, which is indisputably $300.00. It, therefore, can only be "finance charge." Thus the actual APR EZ charged Plaintiff was in excess of

**1050**

400%. Failure to disclose the APR of 400.2% constitutes a TILA violation.

Furthermore, EZ failed to disclose the number, amount, and due dates of required payments; the availability of a rebate in case of refinancing or prepayment in full; and a statement referring borrowers to a contract document for information regarding nonpayment, default, acceleration rights, and prepayment rebates and penalties. Failure to make these disclosures is also a violation of TILA.

Regulation Z § 226.17(b) mirrors TILA § 1638(b) in requiring that these disclosures be made before credit is extended. For the reasons discussed above, EZ has also violated Regulation Z § 226.17(b).

**B. 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a)**

15 U.S.C. § 1632(a) provides that information required to be disclosed by the creditor shall be disclosed "clearly and conspicuously," and that the terms "annual percentage rate" and "finance charge" be disclosed more conspicuously than other information, except that related to the creditor's identity. Regulation Z § 226.17(a) adds that this disclosure must be in writing in a form the consumer may keep, and that disclosures "shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures under § 226.18. The itemization of the amount financed under § 226.18(c)(1) must be separate from the other disclosures under that section." 12 C.F.R. § 226.17(a). Regulation Z § 226.17(a) also requires that the terms "finance charge" and "annual percentage rate" be more conspicuous than any other disclosure, except the creditor's identity. *Id.*

■ EZ's disclosure document uses the same typesize, font, and boldness in listing the terms "annual percentage rate" and "finance charge" as it does in listing other terms, data, and information; thus these terms are no more conspicuous than others. Accordingly, EZ has violated TILA § 1632(a).

The APR and finance charge are not grouped together, and they are not segregated from other information on the form. The itemization of the amount financed is not separated from other disclosures. As noted above, the terms "finance charge" and "annual percentage rate" are not more conspicuous than other disclosures. Thus EZ has also violated Regulation Z § 226.17(a).

**C. 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d)**

15 U.S.C. § 1638(a)(3) requires the creditor to disclose "[t]he 'finance charge', not itemized, using that term." This means the creditor must use the words "finance charge" in describing the required disclosure information. *Id.* Regulation Z § 226.18(d) adds that the creditor must include a brief description of "finance charge," such as "the dollar amount the credit will cost you." 12 C.F.R. § 226.18(d).

■ EZ's disclosure states the finance charge as $6.00. As previously stated, the actual finance charge imposed, calculated in the manner specified by TILA, was $105.00 per month, or $1260.00 per year. EZ did not disclose the finance charge as required by TILA and thus violated TILA § 1638(a)(3).

EZ's disclosure statement did include a description of "finance charge": "The Amount the Check Advance Will Cost You." Thus EZ did not violate Regulation Z § 226.18(d).

**D. 15 U.S.C. § 1638(a)(4) and Regulation Z § 226.18(c)**

■ Where the amount financed exceeds $75.00 and the finance charge exceeds $7.50, 15 U.S.C. § 1638(a)(4) requires the creditor to express the finance charge as an "annual percentage rate," using this phrase in describing the disclosure. Regulation Z § 226.18(c)(1) specifies that the creditor must give a separate written itemization of the amount financed, including the amount of any proceeds directly distributed to the consumer, the amount credited to the consumer's account with the creditor, any amounts paid to other persons by the creditor on the consumer's behalf, and any prepaid finance

charge. 12 C.F.R. § 226.18(c)(1). Alternatively, creditors may choose to provide a statement that the consumer has the right to receive a written itemization of the amount financed, together with a space for the consumer to indicate whether it is desired and the consumer does not request it. 12 C.F.R. § 226.18(c)(2).

The $300.00 financed here exceeds $75.00, and the finance charge of $105.00 exceeds $7.50. Thus, EZ is required by TILA § 1638(a)(3) to disclose an APR. Although EZ stated an APR, it gave this rate as 24% rather than the accurate rate of 400.2%. This incorrect statement violates TILA.

EZ provided neither the separate itemization described by Regulation Z § 226.18(c)(1) nor a space for the consumer to decline this itemization. This violates Regulation Z § 226.18(c)(1).

## IV. PLAINTIFF'S TENNESSEE CONSUMER PROTECTION ACT CLAIM

The Tennessee Consumer Protection Act protects consumers who acquire any property by any disposition. TENN.CODE ANN. § 47–18–103(2) (1995). It governs consumer transactions which involve the advertising or distribution of any service or thing of value. TENN.CODE ANN. § 47–18–103(9). Under the TCPA, it is unlawful to "[r]epresent[ ] that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law," TENN.CODE ANN. § 47–18–104(b)(12), and "[e]ngag[e] in any other act or practice which is deceptive to the consumer or to any other person," TENN.CODE ANN. § 47–18–104(b)(27), where those acts affect the conduct of any trade or commerce.

Plaintiff argues Defendant violated TCPA § 47–18–104(b)(12) by threatening her with criminal prosecution when Defendant had no basis for bringing criminal action. As proof, Plaintiff points to Defendant's letter of April 11, 1997, in which EZ threatened to prosecute her under Tennessee's worthless check law.

Tennessee law forbids prosecution of a person who issues a check which "the payee or holder knows or has good and sufficient reason to believe the drawer did not have sufficient funds on deposit to the drawer's credit with the drawee to ensure payment." TENN.CODE ANN. § 39–14–121(a)(3) (1997). It is not reasonable to believe or assume that a drawer would give a $405.00 check to another person in exchange for $300.00 in cash if the drawer had $300.00 in cash in his checking account at the time. Therefore, it is reasonable, logical, and predictable that any payee in a deferred presentment transaction has reason to believe the drawer of the check does not have sufficient funds in his checking account at that time to cover the amount of the cash advanced, much less the total amount of the check.

Furthermore, criminal prosecution is the state's remedy, not that of a private citizen. Thus Defendant's actions are violative in two ways: no "deferred presentment" borrower can be prosecuted under the worthless check law, and, even if such prosecution was possible, the creditor could not bring the prosecution.

For these reasons, a payee in a deferred presentment transaction cannot criminally prosecute a deferred presentment drawer. Defendant's threat to do so constitutes a representation that EZ had a remedy it did not have. That is a violation of TCPA § 47–18–104(b)(12).

Finally, Plaintiff alleges Defendant has violated TCPA § 47–18–104(b)(27) through use of a deceptive disclosure form. As noted above, Defendant listed the APR on the form received by Plaintiff as 24%, though the true APR exceeded 400%. Defendant listed "Check Guarantor Insurance" as an itemized expense charged to Plaintiff, but EZ did not acquire such insurance or give Plaintiff the opportunity to accept it. Also, as stated earlier, Defendant listed the "finance charge" for the loan as $6.00, though federal law requires $105.00 of the $405.00 check to be counted as "finance charge." The collective group of "disclosure" forms provided between July, 1996, and March, 1997, is deceptive in that each states $300.00 has been disbursed, whereas in reality Plaintiff received only the initial advancement of

$300.00. This is particularly deceptive in light of Defendant's statement in the closing form that "The Amount You Will Have Paid at Settlement" is $405.00. Defendant knew very well, however, that Plaintiff had paid Defendant $840.00 over a seven-month period and still owed Defendant the full amount of the original cash advancement of $300.00, as well as an additional $105.00 in finance charges. The Court finds these deceptive acts constitute violations of the TCPA § 47–18–104(b)(27).

## V. CONCLUSION

The Court finds that the undisputed facts of this case prove that Defendant's deferred check-cashing transactions with the Plaintiff are essentially consumer loans which violate the Truth in Lending Act, Regulation Z, and the Tennessee Consumer Protection Act. Accordingly, the Court finds Defendant is liable under the applicable acts and regulations, and Plaintiff's Motion for Partial Summary Judgment is GRANTED.