**Eugene R. CLEMENT, Gay Ann Blomefield, and Neil Gillespie, individually and on behalf of others similarly situated, Plaintiffs,**

v.

**AMSCOT CORPORATION, Defendant.**

**No. 8:99–CV 2795T26LAJ.**

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 1, 2001.

Scott J. Flint, Jonathan L. Alpert, Alpert, Barker, Rodems, Ferrentino & Cook, P.A., Tampa, FL, William J. Cook, Barker, Rodems & Cook, P.A., Tampa, FL, for Eugene R. Clement, Gay Ann Blomefield, Neil Gillespie, plaintiffs.

John A. Anthony, Gray, Harris, Robinson, Shackleford, Farrior, Tampa, FL, Christine Noworyta Smith, Gray, Harris & Robinson, P.A., Orlando, FL, for Amscot Corporation, A Florida Corporation, defendants.

Carita M. Wells, Tampa, FL, pro se.

## ORDER

LAZZARA, District Judge.

Before the Court is Plaintiffs' Renewed Motion for Class Certification and supporting memorandum (Dkts. 89 and 92), Amscot's Response in Opposition (Dkt.101), Plaintiffs' Notice of Supplemental Authority (Dkt.93), Plaintiffs' Reply Memorandum (Dkt.114), and all depositions, exhibits, declarations, affidavits, and materials on file. After careful consideration, the Court concludes that the motion should be denied as moot and this case should be dismissed.

### This Lawsuit

Defendant Amscot Corporation is a Florida corporation doing business in Hillsborough County, Florida. Defendant operates a check cashing business licensed under Chapter 560 of the Florida Statutes. (Dkt. 14 at pg. 2).

Plaintiff Eugene R. Clement is a resident of Hillsborough County, Florida, and was a customer of Defendant at a Tampa branch. (Dkt. 14 at pgs. 1 and 4). In December 1997, Mr. Clement filled out an application which provided in part in upper case letters: "Chapter 832, Florida Statutes, makes it a crime for any person to knowingly issue a bad check." (Dkt. 14 at pg. 4 and Exh. A). Mr. Clement periodically engaged in "deferred deposit" transactions by providing Defendant one or more non-postdated checks or postdated checks in return for cash. (Dkt. 14 at pg. 4). Mr. Clement also engaged in rollover transactions with Defendant. (Dkt. 14 at pg. 5). Rollover transactions occur approximately two weeks after the initial transaction when persons may pay an additional 10% of the face amount of the check to extend the "deferral period" another two weeks. (Dkt. 14 at pg. 5).

Plaintiff Gay Ann Blomefield is a resident of Hillsborough County, Florida, and was a customer of Defendant at a Tampa branch. She periodically engaged in "deferred deposit" transactions by providing Defendant one or more non-postdated or postdated checks in return for cash. (Dkt. 86 at pg. 4). Ms. Blomefield also engaged in rollover transactions with Defendant. (Dkt. 86 at pg. 4). She engaged in a series of various transactions with Defendant for approximately two years before this lawsuit was filed. (Dkt. 86 at pg. 4).

Neil Gillespie is a resident of Pinellas County, Florida, and was a customer of Defendant at a St. Petersburg branch. (Dkt. 86 at pg. 5). Mr. Gillespie periodically engaged in "deferred deposit" transactions by providing Defendant one or more non-postdated checks. (Dkt. 86 at pg. 5). He engaged in deferred deposit transactions on at least eleven occasions ending in November of 1999. (Dkt. 86 at pg. 5).

In two complaints the Plaintiffs and Intervenor Plaintiffs sued Defendant for various violations focusing on its failure to disclose certain information in the transactions and its charging usurious interest. Count I seeks relief under the Truth–in–Lending Act (the TILA). Counts II and III assert state law claims for usury and violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), respectively.

### Procedural Background

On September 8, 2000, this Court denied the motion to dismiss the First Amended Class Action Complaint, ruling at that time that sufficient facts were alleged to avoid dismissal of the suit. (Dkt.45).[1] Neither party directed this Court's attention to 65 Fed.Reg. 17129, in which the Board of

---

1. On March 20, 2001, this Court permitted intervention of Plaintiffs Gay Ann Blomefield and Neil Gillespie and denied class certification without prejudice. (Dkt.85). On March 23, 2001, Plaintiffs' counsel filed the Class Action Complaint-in—Intervention. (Dkt.86).

Governors of the Federal Reserve System (Board) published revisions to the official staff commentary to Regulation Z promulgated pursuant to the TILA. The revisions, dated March 31, 2000, addressed short-term cash advances known as "payday loans." After considering the arguments made and all the authorities now before it, the Court finds that count I fails to allege a claim for relief under the TILA.[2] Moreover, any attempt at stating a claim under the TILA would be futile. Having reached this conclusion, the motion for class certification is now moot.

## Count I: Truth–in–Lending Violations

### The Board's Role

Congress delegated expansive authority to the Board to promulgate regulations to carry out the purpose of the TILA. *See* 15 U.S.C.A. § 1604(a); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 560, 566, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). One of the purposes of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *See* 15 U.S.C.A. § 1604(a). The Board created Regulation Z as a regulation necessary to effectuate the purposes of the TILA. *See* 12 C.F.R. § 226(a) ("This regulation, known as Regulation Z, is issued by [the Board] to implement the [TILA], which is contained in Title I of the Consumer Credit Protection Act, as amended (15 U.S.C. 1601 et seq.).").

Apart from the promulgation of regulations to implement the TILA, the Board may also rely on its staff to issue administrative interpretations in the form of an official staff commentary. *See* 15 U.S.C.A. § 1640(f). As stated by the Board in its March 31, 2000, issuance of a final rule addressing payday loans:

The Board's official staff commentary (12 C.F.R. part 226 (Supp.I)) interprets [Regulation Z], and provides guidance to creditors in applying the regulation to specific transactions. The commentary is a substitute for individual staff interpretations; it is updated periodically to address significant questions.

Congress has bestowed such great authoritative weight to the interpretations and applications by the staff of the Board, that "it is unrealistic to draw a radical distinction between opinions issued under the imprimatur of the Board and those submitted as official staff memoranda." *See Ford Motor,* 444 U.S. at 566 n. 9, 100 S.Ct. 790.

### The Court's Role

"[T]he legislative history evinces a decided preference for resolving interpretive issues by uniform administrative decision, rather than piecemeal through litigation." *Ford Motor,* 444 U.S. at 568, 100 S.Ct. 790. Thus, courts should not substitute their interpretations of the TILA for that of the Board, "so long as the latter's lawmaking is not irrational." *See Ford Motor,* 444 U.S. at 568, 100 S.Ct. 790. Where the Board and its staff have effectively clarified an area of the law, the courts must accept those opinions construing the TILA and the regulations and consider them dispositive absent "some obvious repugnance to the statute." *See Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 219, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) (citing *Ford Motor*). Apart from determining whether the commentary is repugnant to the statute, however, the court's more difficult role, at least in this case, is deciding whether the commentary should be applied retroactively to transactions occurring before the effective date of

---

**2.** As to the remaining two state-law claims for usury and violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), the Court finds it inappropriate to exercise its pendent jurisdiction.

the commentary. *See, e.g., McPhillips v. Gold Key Lease, Inc.,* 38 F.Supp.2d 975 (M.D.Ala.1999); *Wiley v. Earl's Pawn & Jewelry, Inc.,* 950 F.Supp. 1108 (S.D.Ala. 1997).

### *"Payday Loan" as an Extension of Credit*

This action involves "payday loans" which, as argued by Plaintiffs and many other plaintiffs in similar cases, requires an examination of the term "credit" as that term is defined by the TILA, Regulation Z, and any official staff commentaries. Credit is defined the same by the TILA and Regulation Z as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." *See* 15 U.S.C.A. § 1602(e); 12 C.F.R. § 226.2(a)(14). The official staff commentary now defines credit to specifically include payday loans:

2(a)(14) "Credit".

. . . . .

2. Payday loans; deferred presentment. Credit includes a transaction in which a cash advance is made to a consumer in exchange for the consumer's personal check, or in exchange for the consumer's authorization to debit the consumer's deposit account, and where the parties agree either that the check will not be cashed or deposited, or that the consumer's deposit account will not be debited, until a designated future date. This type of transaction is often referred to as a "payday loan" or "payday advance" or "deferred presentment loan." A fee charged in connection with such a transaction may be a finance charge for purposes of § 226.4, regardless of how the fee is characterized under state law. Where the fee charged constitutes a finance charge under § 226.4 and the person advancing funds regularly extends consumer credit, that person is a creditor and is required to

provide disclosures consistent with the requirements of Regulation Z. See § 226.2(a)(17).

12 C.F.R. Pt. 226 (Supp.I).

All of the transactions in this action occurred before the effective date of the official staff commentary, which is March 24, 2000. *See* 65 Fed.Reg. 17129. Generally, retroactive application of administrative rules is not favored. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). Some courts, however, have held that this general rule disfavoring retroactivity "does not necessarily apply to agency commentaries." *See McPhillips,* 38 F.Supp.2d at 980 (citing *Barlow v. Evans,* 992 F.Supp. 1299, 1305 (M.D.Ala. 1997)). In any event, the court must give deference to the agency's classification of the commentary as either a clarification or a change. *See McPhillips,* 38 F.Supp.2d at 980 (citing *Wright v. Director, Federal Emergency Management Agency,* 913 F.2d 1566, 1571 (11th Cir.1990)). Nevertheless, "unfettered deference to an agency's classification of its revision as a clarification would allow an agency to make substantive changes, with retroactive effect, merely by referring to the new interpretation as a clarification." *See McPhillips,* 38 F.Supp.2d at 980 (citing *Pope v. Shalala,* 998 F.2d 473, 482 (7th Cir.1993), *overruled on other grounds, Johnson v. Apfel,* 189 F.3d 561 (7th Cir.1999)).

### *Clarification versus Amendment or Change*

To determine whether the March 2000 official staff revision should have retroactive application to this case, the revision must be examined in view of the past interpretations by the agency of the particular subject matter of the revision. *See McPhillips v. Gold Key Lease, Inc.,* 38 F.Supp.2d 975, 980 (M.D.Ala.1999) ("court

should consider whether the revision is consistent with prior interpretations and views expressed by the agency"). In the event there are no prior interpretations of the particular transaction, this fact should also be considered.[3] If a court finds that revisions to the official staff commentary amount to a substantive change, rather than simply a clarification of existing law, then the commentary is not applied retroactively. *See McPhillips*, 38 F.Supp.2d at 980 (court found that revisions amounted to substantive change in law even though Board interpreted its revision as a clarification).

First, the evolution of the official staff commentary adding payday loans and deferred presentments to the definition of credit must be examined. Beginning on November 5, 1999, the Board published for comment proposed revisions to the official staff commentary to Regulation Z with respect to short-term cash advances or "payday loans." *See* 64 Fed.Reg. 60368. The November publication noted that the revisions to the commentary would be adopted in final form in March 2000 and "to the extent the revisions impose new requirements on creditors, compliance *would be optional until October 1, 2000, the effective date for mandatory compliance.*" (Emphasis added). This statement makes it clear that any new requirements placed on the creditors will not be enforced through mandatory compliance until six months after the effective date of the rule.

The Board addressed in particular the definition of credit in the November publication in pertinent part as follows:

The Board has been asked to *clarify* whether "payday loans"—also known as "cash advance loans," "check advance loans," and "post-dated check loans"—constitute credit for purposes of TILA. Typically in such transactions, a short-term cash advance is made to a customer in exchange for the consumer's personal check in the amount of the advance, plus a fee; sometimes the advance is made in exchange for the consumer's authorization to debit electronically the consumer's checking account in the amount of the advance, plus a fee. The transaction occurs with knowledge by both parties that the amount advanced is not, or may not be, available from the consumer's checking account at the time of the transaction. Thus, the parties agree that the consumer's check will not be cashed or the account electronically debited until a designated future date. On that date, the consumer usually has the option to repay the obligation by allowing the party advancing the funds to cash the check or electronically debit the consumer's checking account, or by providing cash or some other means of payment. The consumer may also have the option to defer repayment beyond the initial period by paying an additional fee.

Section 226.2(a)(14) defines credit as the right to defer the payment of debt or the right to incur debt and defer its payment. In the case of payday loans, this includes the agreement to defer cashing the check or debiting the consumer's account. Comment 2(a)(14)–2 would be added to *clarify* that payday

---

**3.** Plaintiffs cite *Barlow v. Evans*, 992 F.Supp. 1299, 1305 (M.D.Ala.1997), and *Wiley v. Earl's Pawn & Jewelry*, 950 F.Supp. 1108, 1112 (S.D.Ala.1997), as court opinions holding that the staff commentary subjecting pawnbrokers to the TILA applied to transactions that preceded the commentary's effective date. These cases involved a different revision. Each new revision should be examined as a whole to determine its applicability to the individual case.

loan transactions constitute credit for purposes of TILA. Persons that regularly extend payday loans and impose a finance charge are required to provide TILA disclosures to consumers.

64 Fed.Reg. 60368 at *60368–60369 (emphasis added). The commentary employs the word "clarify" two times in the above-referenced section. The first time "clarify" is used in the sense that the commentary will be determining once and for all if (not when) payday loans fall within the definition of credit under the TILA and Regulation Z. The second time "clarify" appears in the above section, it merely states that the comment will be added to definitively make payday loans an example of something that constitutes credit.

Having received comments, thereafter on March 31, 2000, the Board published the final revisions to the official staff commentary to Regulation Z. The effective date of the revised commentary was March 24, 2000, with the proviso that "[c]ompliance is optional until October 1, 2000." *See* 65 Fed.Reg. 17129. The background section of the revised commentary reveals the various comments made regarding the applicability of the TILA and Regulation Z to payday loans and provides in pertinent part:

> In November 1999, the Board published proposed amendments to the commentary (64 FR 60368, November 5, 1999). The Board received more than 50 comment letters. Most of the comments were from financial institutions, other creditors, and their representatives. Comments were also received from state attorneys general, state regulatory agencies, and consumer advocates. The comment letters were focused on the proposed comment concerning payday loans. Most commenters supported the proposal. A few commenters, mostly payday lenders and their representatives, were opposed.

> As discussed below, the commentary is being adopted substantially as proposed. Some revisions have been made for clarity in response to commenters' suggestions. The commentary revision concerning payday loans *clarifies* that when such transactions involve an agreement to defer payment of a debt, they are within the definition of credit in TILA and Regulation Z.

65 Fed.Reg. 17129 (emphasis added). The term "clarifies" found in this section appears to mean the same thing as it did in the November publication—that payday loans are now defined as credit.

Under "Commentary Revisions" of the March 2000 publication, the commentary expounded upon the comments submitted regarding payday loans as follows:

> 2(a)(14) Credit.

> The Board proposed to add comment 2(a)(14)–2 to *clarify* that transactions commonly known as "payday loans" constitute credit for purposes of TILA. . . . . Most commenters supported the proposal because they believed that payday loans are credit transactions. A few commenters opposed the proposal. These commenters questioned whether payday loans should be covered under TILA when applicable state law does not treat such transactions as credit. They were concerned that Regulation Z would preempt state law where, for example, the transactions are regulated under check-cashing laws, and they also asserted that providing TILA disclosures would result in unnecessary compliance costs. These commenters also questioned whether disclosure of the APR in such transactions provides consumers with useful information. One commenter asserted that the proposed comment's scope was unclear, and believed the comment might be interpreted too broadly, resulting in the application

of Regulation Z to noncredit transactions. This commenter also suggested that payday lenders will be unable to determine whether transactions are consumer credit or for an exempt purpose, such as business credit.

For the reasons discussed below, comment 2(a)(14)–2 is adopted to *clarify* that payday loans, and similar transactions where there is an agreement to defer payment of a debt, constitute credit for purposes of TILA. Some revisions have been made for clarity to address commenters' concerns.

(Emphasis added). Obviously, some issues existed with respect to a state law's effect on the TILA. The term "clarify" or "clarifies" in this section ultimately determines that payday loans fall within the definition of credit.

The March 2000 publication specifically addresses the interplay between state laws and the TILA and Regulation Z as follows:

TILA, as implemented by Regulation Z, reflects the intent of the Congress to provide consumers with uniform cost disclosures to promote the informed use of credit and assist consumers in comparison shopping. This purpose is furthered by applying the regulation to transactions, such as payday loans, that fall within the statutory definition of credit, regardless of how such transactions are treated or regulated under state law. The fact that some creditors may have to comply with state laws as well as with Regulation Z, and that creditors may bear compliance costs, is not a sufficient basis to disregard TILA's applicability to the covered transactions. Where a creditor is unable to determine if a transaction is primarily for an exempt purpose, such as business-purpose credit, the creditor is free to make disclosures under TILA, and the fact that disclosures are made would not be controlling on the question of whether the

transaction was exempt. See Comment 3(a)–1.

A few commenters questioned the effect of the proposed comment on state laws that regulate payday loans and similar transactions. Section 226.28 of Regulation Z describes the effect of TILA on state laws. As a general matter, state laws are preempted if they are inconsistent with the act and regulation, and then only to the extent of the inconsistency. A state law is inconsistent if it requires or permits creditors to make disclosures or take actions that contradict the requirements of federal law. A state law may not be deemed inconsistent if it is more protective of consumers.

TILA does not impair a state's authority to regulate or prohibit payday lending activities. Persons that regularly extend payday loans and otherwise meet the definition of creditor (§ 226.2(a)(17)) are required, however, to provide disclosures to consumers consistent with the requirements of Regulation Z.... The Board will review any issues brought to its attention regarding the effect of TILA and Regulation Z on particular state laws....

The Board recognizes in this section that certain states have passed laws sheltering the fees charged for payday loans from characterization as finance charges or interest, such as Florida. The commentary places everyone on notice that the TILA and Regulation Z in essence trump state law characterizations of fees as something other than what the federal laws prescribe. In that vein, the March publication provides:

In describing payday loan transactions, the proposed comment referred to the fact that consumers typically must pay a fee. Some commenters questioned whether such fees are finance charges

for purposes of Regulation Z. Theses commenters noted that under some state laws, the fees charged for payday loans and similar transactions are not considered interest or finance charges. A fee charged in connection with a payday loan may be a finance charge for purposes of TILA pursuant to section 226.4 of Regulation Z, regardless of how the fee is characterized for state law purposes. Where the fee charged constitutes a finance charge under TILA, and the person advancing funds regularly extends consumer credit, that person is a creditor covered by Regulation Z. See § 226.2(a)(17). Comment 2(a)(14)–2 has been revised to reflect this guidance. (Emphasis added.) Thus, proponents of payday lenders in most instances can no longer rely on the argument that state law preempts the TILA and Regulation Z.

Finally, at the end of the revision, the staff attempts to classify the revision as a clarification rather than a change in the law with respect to payday loans:

> *Comment 2(a)(14)–2 has been added as an example of a specific type of transaction that involves an agreement to defer payment of a debt.* ***Because such a transaction falls within the existing statutory and regulatory definition of "credit," the comment does not represent a change in the law.*** *Generally, updates to the Board's staff commentary are effective upon publication.* ***Consistent with the requirements of section 105(d) of TILA, however, the Board typically provides an implementation period of six months or longer. During that period, compliance with the published update is optional so that creditors may adjust their documents***

***to accommodate TILA's disclosure requirements.***

(Emphasis added). While the Board's staff has stated that the comment "does not represent a change in law," at the same time it provided creditors an implementation period "so that creditors may adjust their documents to accommodate TILA's disclosure requirements." This allowance seems to admit that the Board's staff was aware that this particular area had not been made a part of the law as it existed at the time of the notice for the proposed rule. Indeed, the Board entertained comments and took a position on how to handle the TILA with co-existing state laws for check cashing.

■ This Court is unaware of any prior interpretations by the staff definitively making payday loans part of credit as that term is defined by the TILA and Regulation Z. This case presents a situation in which no final commentary addressing payday loans existed prior to the final March 2000 revision which made payday loans part of credit under the TILA and Regulation Z. There is no question that in Florida the effect of the TILA and Regulation Z has been unclear with respect to those properly registered under Chapter 560 of the Florida Statutes. While some federal district court opinions outside of Florida have held that payday loans are extensions of credit under the TILA and Regulation Z,[4] the decisions within Florida have not been uniform. *See Gonzales v. Easy Money, Inc.,* No. 5:00–cv–2–Oc–10GRJ (Feb. 22, 2001); *Clement v. Ace Cash Express, Inc.,* No. 8:00–cv–593–T–26C (M.D.Fla. Dec. 21, 2000); *Betts v. McKenzie Check Advance of Florida, LLC,* No. 8:99–cv–2828–T–30F (M.D.Fla. Dec.

---

**4.** *See Hartke v. Illinois Payday Loans, Inc.,* 1999 U.S.Dist. LEXIS 14937, \*6 (C.D.Ill. Sept. 13, 1999); *Turner v. E–Z Check Cashing of Cookeville, TN, Inc.,* 35 F.Supp.2d 1042, 1048 (M.D.Tenn.1999); *In re: Brigance,* 219 B.R. 486, 492 (Bankr.W.D.Tenn.1998); *Hamilton v. York,* 987 F.Supp. 953, 957–958 (E.D.Ky.1997).

20, 2000). Based on the comments solicited by the Board and the fact that no prior interpretations by the agency had been expressed, the Court finds that the March 2000 revision effects a substantive change in the law without retroactive application. Because the transactions at issue in this case occurred before compliance with the official staff commentary was either optional or mandatory, the official staff commentary should not be applied to them.

Based on the above reasons and absent any authority from the Eleventh Circuit or United States Supreme Court to the contrary, the Court finds that the official staff commentary at issue should not be given retroactive application in this case. Consequently, count I is dismissed with prejudice.

### Counts II and III: Violations of Florida's Usury Law and FDUTPA

 Because the Court has resolved Plaintiffs' federal claims against Defendant, only Plaintiffs' state law claims remain in this action. Title 28, Section 1367 of the United States Code provides that the district courts may decline to exercise supplemental jurisdiction over state claims where it has dismissed all the underlying federal claims. See 28 U.S.C. § 1367(c)(3). In making this determination, the court should consider factors such as "comity, judicial economy, convenience, fairness, and the like." See Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir.1999) (quoting Roche v. John Hancock Mut. Life Ins. Co. 81 F.3d 249, 257 (1st Cir.1996)). Although this decision is discretionary, see Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1350 (11th Cir.1998 ), the dismissal of state law claims is strongly encouraged where the federal claims are dismissed prior to trial. See Baggett v. First Nat'l Bank, 117 F.3d 1342, 1353 (11th Cir. 1997). Where the court declines to exer-cise supplemental jurisdiction over such claims, the claims should be dismissed without prejudice so they can be refiled in the appropriate state court. See Crosby, 187 F.3d at 1352. In the interest of judicial economy and convenience, the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this action.

Accordingly, it is therefore ordered and adjudged as follows:

1. Plaintiffs' Renewed Motion for Class Certification (Dkt.89) is **denied as moot.**

2. Count I is dismissed with prejudice.

3. Counts II and III are dismissed without prejudice to bringing them in state court.

4. The Clerk is directed to close this file.